ANNE TENNICOTT, Adm'r of the Estate of Harold Tennicott, Deceased, Plaintiff-Appellee, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (3rd Division)    No. 80-173

Opinion filed December 23, 1981.—Rehearing denied February 5, 1982.

Edward J. Egan and Richard T. Ryan, both of Chicago, for appellant.

Philip H. Corboy and Nicholas J. Motherway, both of Philip H. Corboy & Associates, P. C., of Chicago, for appellee.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Harold Tennicott was stabbed to death on October 14, 1974, while on a Chicago Transit Authority passenger platform at 79th Street and the Dan Ryan Expressway in Chicago. Plaintiff, Anne Tennicott, administrator of the decedent's estate, brought a wrongful death action claiming that the negligence of defendant Chicago Transit Authority was a proximate cause of Tennicott's death. A jury returned a verdict of $125,000 in favor of plaintiff. Defendant appeals, contending that the trial court erred in making a judicial finding of negligence against defendant. The trial court's ruling was imposed as a sanction because of defendant's failure to comply with discovery proceedings. Plaintiff cross-appeals, contending that she is entitled to a new trial on damages only. We reverse and remand.

While the case was pending in the circuit court, plaintiff filed a "Written Request to Produce Pursuant to Rule 214." The document requested all reports and records of assaults, murders, robberies or other infringements of the law occurring at the train station for a period of two years prior to the occurrence. Defendant responded by sending plaintiff a list of six incidents. The list included the date, time and nature of each incident. In regard to a specific request for records of these incidents, defendant replied "None."

The case was assigned for trial on a Friday. On Monday, plaintiff served a supplemental notice to produce, which included a request for incidents of crime at the train station for a period of five years prior to the occurrence. On the following day, defendant gave plaintiff a list of criminal incidents for the five years preceding the occurrence. This new list included an incident which should have been included in the original list given to plaintiff. Defense counsel explained that the unreported incident was inadvertently not included in the information supplied to him by defendant from ledgers maintained by defendant. Plaintiff protested that defendant had previously stated that there were no records of the incidents. Defense counsel responded that there were no records of the incidents other than the ledgers, and that the ledgers contained no information beyond that which was included on the lists supplied to plaintiff.

Colloquy ensued between the trial court and counsel which resulted in the production of the ledger sheets and the testimony of Edward P.

Henry of the Safety Department of the CTA outside the presence of the jury. Henry testified that the information on the two lists supplied to plaintiff was verbatim from the information contained on the ledger sheets. However, when plaintiff examined the ledger sheets, plaintiff noticed an entry for a robbery of a ticket agent at the train station 11 days prior to the date Tennicott was killed. This incident was not included on either of the lists of incidents previously submitted to plaintiff. Defense counsel stated that this incident was not included on the lists because of the mistaken belief that plaintiff's request related only to incidents involving passengers.

Another dispute then arose because one of the columns on the ledger sheets listed file numbers. Henry stated that the information entered on the ledger sheets came from briefs which have an incident number. Defendant claims that it is this incident number which is recorded as the file number on the ledger sheets. According to Henry, the briefs are destroyed once the information contained in them has been entered in the ledgers. The record does not reflect that files existed at any time relevant to discovery proceedings in the case.

As a result of what occurred, the trial court made a judicial finding of negligence against defendant. This ruling was made during the time for plaintiff's presentation of evidence.

■■ It is apparent that defendant's conduct relating to the production of documents did not fall within the realm of the expected spirit of the rules of discovery, and as a result, defendant may have obstructed the orderly processes of discovery. Accordingly, it was proper for the trial court to impose sanctions against defendant pursuant to Supreme Court Rule 219 (Ill. Rev. Stat. 1979, ch. 110A, par. 219). However, the sanction imposed was virtually the most severe sanction available. We conclude that the sanction was not just and did not accomplish the ultimate purpose of the rules of discovery, which is to have cases tried on their merits.

■■ Supreme Court Rule 219(c) vests the trial court with great power in authorizing the court to enter "such orders as are just" if a party fails to comply with discovery procedures. (Ill. Rev. Stat. 1979, ch. 110A, par. 219(c).) However, such a breadth of power requires a careful exercise of discretion in order to balance the needs of discovery and trials on their merits. Here, before plaintiff concluded the presentation of her evidence, the ledgers were produced by defendant, and plaintiff was advised of the two additional criminal incidents that had occurred at the train station. Thus, instead of making a judicial finding of negligence against defendant, the trial court could have permitted the evidence favorable to plaintiff to be admitted into evidence and allowed the case to be tried on the merits with perhaps a short continuance if requested by plaintiff.

Other sanctions could have been imposed against defendant which would have been meaningful and yet allowed the issues to be resolved on their merits.

Plaintiff contends that the only meaningful sanction that could have been imposed was the entry of a judgment of liability against defendant. Under plaintiff's theory, virtually every infraction of the discovery rules by a party would necessitate a Draconian sanction. This would not be a practical solution to problems arising either during discovery or at trial.

Plaintiff relies heavily upon statements found in *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, 374 N.E.2d 460, 467. However, we do not equate what occurred in *Buehler* with this case. Here, unlike *Buehler*, the record does not support a conclusion that the defendant wilfully gave false answers under oath or wilfully secreted evidence which was discovered from another case. Moreover, in *Buehler*, the supreme court *affirmed the denial of sanctions by the trial court*, and held that the denial of the "motion for a new trial lay within the discretion of the trial court." *Buehler*, 70 Ill. 2d 51, 67, 374 N.E.2d 460, 467.

Accordingly, we conclude that the sanction imposed in this case was not proper, and, therefore, the judgment must be reversed. The case is remanded for a new trial. As a result of our conclusion, we need not consider the other issues raised on appeal.

Reversed and remanded.

McNAMARA and WHITE, JJ., concur.