OCTABIO MARTINEZ, a Minor, by Carolyn Martinez, Guardian and Next Friend, Plaintiff-Appellant, v. PFIZER LABORATORIES DIVISION, Defendant-Appellee.

First District (1st Division)  No. 1—89—0325

Opinion filed June 28, 1991.

Goldberg & Goldberg and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellant.

Kirkland & Ellis, of Chicago (Stephanie A. Scharf, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Octabio Martinez (a minor represented by guardian Carolyn Martinez), appeals orders of the circuit court of Cook County compelling the production of certain documents and dismissing his claims against defendant Pfizer Laboratories for failing to comply with those discovery orders. For the reasons which follow, we reverse the judgment of the circuit court and remand for further proceedings.

The record on appeal discloses the following. In 1981, a complaint was filed on plaintiff's behalf which alleged a product liability claim against defendant.[1] The complaint alleged that plaintiff had suffered harm resulting from the prescription of a drug manufactured by defendant to plaintiff's mother during her pregnancy with plaintiff.

On February 18, 1983, the trial court ordered plaintiff to disclose his expert witnesses on or before July 15, 1983. On July 24, 1986, the trial court ordered plaintiff to disclose his expert witnesses on or before August 24, 1986. On December 23, 1986, the trial court issued an order barring plaintiff from presenting expert testimony. This last order was subsequently vacated by the trial court.

The trial court entered an order on January 21, 1988, requiring plaintiff to produce Dr. Tomasi by May 10, 1988, or his testimony would be barred at trial. An April 25, 1988, order required plaintiff to produce certain documents and respond to interrogatories by May 3, 1988.

The trial court again ordered plaintiff to produce Dr. Tomasi on May 10, 1988, setting a July 1, 1988, deadline. This order also required plaintiff to answer interrogatories. An order dated June 23, 1988, moved the deadline for producing Dr. Tomasi and answering the interrogatories to August 31, 1988.

On August 9, 1988, the trial court ordered plaintiff to produce Dr. Tomasi by August 29, 1988. The trial court then entered an order on August 30, 1988, directing plaintiff to produce Dr. Tomasi and disclose any other experts he intended to call against defendant by September 20, 1988.

---

[1] The complaint also asserted medical malpractice claims against a number of physicians and a hospital, none of which are involved in this appeal.

On September 29, 1988, defendant filed a motion to compel the production of information reflecting the relationship between plaintiff's counsel and plaintiff's expert, Dr. Tomasi. In that motion defendant stated that it requested:

> "All documents in the possession of plaintiff, plaintiff's counsel or any other person who is plaintiff's agent or representative that reflect, refer or relate to Lawrence Tomasi, M.D., including but not limited to documents reflecting fees paid or bills received by plaintiff or plaintiff's counsel in this or other matters and transcripts of or affidavit ever given by Dr. Tomasi."

Defendant further requested that plaintiff's counsel:

> "Identify by title and case number any other litigation in which he [Dr. Tomasi] has been consulted or testified as an expert, at trial or in deposition, specifying those matters to which he testified which are the same or similar to the matters involved in this lawsuit (Pfizer Supplemental Rule 220 Interrogatories, No. 1(f))."

At a hearing held on the matter, plaintiff's counsel argued that the information sought by defendant was shielded from discovery by the attorney-client and physician-patient privileges. Plaintiff's counsel also indicated that he would refuse to comply with an order granting defendant's motion and asked the trial court to hold him in contempt. The trial court refused this request, but indicated that the matter could be taken up if the order was ignored. The trial court granted defendant's motion on October 7, 1988.

On November 16, 1988, defendant filed a motion pursuant to Supreme Court Rule 219 (134 Ill. 2d R. 219), urging the trial court to tax plaintiff's counsel with the costs, fees and other expenses of completing Dr. Tomasi's deposition and of bringing the motion, along with other sanctions. On January 6, 1989, following a hearing on the motion, the trial court entered an order which required plaintiff to produce material listed in paragraph three of defendant's motion, to wit:

> "a. Documents that show how much money Dr. Tomasi has earned from Goldberg & Goldberg [plaintiff's counsel] since he began consulting with Goldberg & Goldberg sometime in the 1970's, whether he earned those fees as a treating physician, consulting expert or expert witness. Such documents include IRS 1099 forms, cancelled checks, check stubs and any other records of payment or requests for payment.
>
> b. Identification of the cases in which Dr. Tomasi has been disclosed by Goldberg & Goldberg as an expert witness and, for

such cases, providing answers to interrogatories posed about Dr. Tomasi and his opinions, all transcripts of Dr. Tomasi's testimony and all affidavits signed by Dr. Tomasi.

    c. The number of cases on which Dr. Tomasi has consulted to Goldberg & Goldberg whether as a treating physician, consulting expert or expert witness; and

    d. The number of patients referred to Dr. Tomasi by Goldberg & Goldberg."

The order stated that if this information was not produced by January 11, 1989, all of plaintiff's claims against defendant would be dismissed.

    On January 9, 1989, plaintiff filed a motion to vacate the order of January 6, arguing that the requested documents could not be compiled within five days and that dismissal was an inappropriate sanction in this matter, requesting in the alternative that plaintiff's counsel be held in contempt.

    On January 12, 1989, defendant filed a certification of plaintiff's noncompliance with the October 7, 1988, and January 6, 1989, court orders. The following day, defendant filed an emergency motion for the entry of a finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of the claims that were dismissed against Pfizer. At a hearing held that day on the matter, plaintiff again requested that the trial court issue a contempt citation rather than dismiss the claims. The trial court granted defendant's motion.

    On appeal, plaintiff argues that the trial court erred by issuing discovery orders that were overbroad and required the disclosure of privileged information.

    ■■ ■ The supreme court rules authorize broad discovery " 'regarding any matter relevant to the subject matter involved in the pending action.' " (*Computer Teaching Corp. v. Courseware Applications, Inc.* (1990), 199 Ill. App. 3d 154, 157, 556 N.E.2d 816, 818, quoting 107 Ill. 2d R. 201(b)(1).) The objectives of pretrial discovery are: (1) the enhancement of the truth-seeking process; (2) the improvement in preparation by attorneys for trial; (3) the elimination of unfair surprise; and (4) the expeditious and final determination of controversies in accordance with the substantive rights of the parties. (See *Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 231-32, 443 N.E.2d 1125, 1128.) Disclosure is the object of all discovery procedures. (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, 374 N.E.2d 460, 467.) Traditionally, the trial court is accorded great latitude in determining the scope of discovery because the range of relevance and ma-

teriality for discovery purposes includes not only what is admissible at trial but also that which leads to what is admissible at trial. (*Mistler*, 111 Ill. App. 3d at 232, 443 N.E.2d at 1128.) A reviewing court will not disturb a trial court's discovery rulings absent an abuse of discretion. (*M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193.) Nevertheless, that discretion must be carefully exercised in order to balance the needs of discovery and resolution of the issues on their merits. *Tennicott v. Chicago Transit Authority* (1981), 103 Ill. App. 3d 607, 431 N.E.2d 1077.

██ The breadth of permissible discovery has its limits; discovery requests and orders must have some degree of specificity. The specificity requirement has two purposes: (1) to provide a reasonable description of the items requested, giving those from whom discovery is sought notice of what is being demanded of them; and (2) to aid the trial court in determining whether the requested material is exempted or privileged from discovery. *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 356, 221 N.E.2d 410, 414.

What suffices as a reasonable description may be determined on a case-by-case basis. (See *Monier*, 35 Ill. 2d at 356.) For example, in *People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 226 N.E.2d 6, defendant General Motors filed a writ of *mandamus* against Judge Nicholas J. Bua for his entry of a default judgment where defendant violated a court order requiring the production of all documents relating to the design of the Corvair automobile for the model years 1960 through 1965. In vacating the default judgment, the Illinois Supreme Court noted the production order was a "catch-all demand for the production of documents without the slightest degree of specificity." (*Bua*, 37 Ill. 2d at 194, 226 N.E.2d at 15.) The court noted the records sought for each year were voluminous and their production would require substantial expense, labor, and a certain degree of business disruption. (*Bua*, 37 Ill. 2d at 193-94, 226 N.E.2d at 14.) The court concluded:

> "While flexibility is necessary in discovery, due process requires that production orders be sufficiently specific to inform a person of his obligation thereunder, especially in light of the extreme sanctions available for a violation of such order." *Bua*, 37 Ill. 2d at 195, 226 N.E.2d at 15.

Similarly, in *Monier v. Chamberlain* (1966), 66 Ill. App. 2d 472, 213 N.E.2d 425, *aff'd* (1966), 35 Ill. 2d 351, 221 N.E.2d 410, the plaintiff filed two motions to compel discovery from the defendant and the trial court entered an order requiring defendant to produce documents for inspection and copying which included:

"5) All written statements of witnesses, whether signed or unsigned, obtained by agents, employees or other personnel of the Country Mutual Insurance Company obtained prior to the employment of Eugene H. Rennick, Jr., Attorney at Law, Toulon, Illinois, or Robt. A. Barnes, Attorney at Law, Lacon, Illinois, attorneys for the defendant in the cause." (*Monier*, 66 Ill. App. 2d at 477, 213 N.E.2d at 429.)

The Illinois Appellate Court held this request to have been overbroad, stating: "Where a request is made for 'all written statements' as ordered in paragraph 5 there is nothing therein contained which even limits such statements to the immediate cause of action." *Monier*, 66 Ill. App. 2d at 487, 213 N.E.2d at 434. Compare with *Nehring v. First National Bank* (1986), 143 Ill. App. 3d 791, 797-98, 493 N.E.2d 1119, 1124 (approving discovery where defendant's request was limited to documents connected to the immediate cause of action).

■ As to the second purpose of the specificity requirement, aiding the trial court in determining whether the material sought is exempt or privileged from discovery, Supreme Court Rule 201(b)(2) states:

"All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." (134 Ill. 2d R. 201(b)(2).)

Privileges are designed to protect interests outside the truth-seeking process. (*Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1990), 203 Ill. App. 3d 172, 176, 560 N.E.2d 1093, 1096, *appeal allowed* (1990), 135 Ill. 2d 567, 564 N.E.2d 849, citing E. Cleary, McCormick on Evidence §92, at 192 (2d ed. 1972).) Therefore, privileges are strictly construed as an exception to the general duty to disclose. (*People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 535, 332 N.E.2d 649.) When the principles of disclosure and privilege clash, the court must balance them in light of the specific facts in each case. *Taylor v. Taylor* (1977), 45 Ill. App. 3d 352, 354-55, 359 N.E.2d 820, 821.

In the present appeal, defendant has sought information regarding the relationship between plaintiff's counsel and plaintiff's medical expert witness. Our supreme court has not directly addressed this issue. In *Sears v. Rutishauser* (1984), 102 Ill. 2d 402, 466 N.E.2d 210,

the supreme court held that defense counsel may cross-examine plaintiff's expert witness concerning the number and frequency of referrals the expert had received from plaintiff's attorney and the financial benefit derived from them. (*Sears*, 102 Ill. 2d at 408-09, 466 N.E.2d at 214.) The court warned, however, that the vigorous cross-examination of physicians must be limited by protection of the physician-patient privilege as well as avoidance of subtrials on issues remote from the subject of the lawsuit or pertaining to cases having no relation to the litigation. (*Sears*, 102 Ill. 2d at 407-08, 466 N.E.2d at 213.) In *Trower v. Jones* (1988), 121 Ill. 2d 211, 520 N.E.2d 297, the court held that an expert can be cross-examined concerning the expert's annual income from her services as an expert witness for the previous two years and the frequency with which she has testified for a particular class of persons, such as plaintiffs or defendants. (*Trower*, 121 Ill. 2d at 218, 220, 520 N.E.2d at 300, 301.) The court also explicitly noted that its decision did not create any additional exceptions to existing evidentiary privileges or restrict the discretion of the trial court in overseeing or limiting the discovery process. *Trower*, 121 Ill. 2d at 221-22, 520 N.E.2d at 302.

While *Sears* and *Trower* were concerned with cross-examination rather than discovery, this court addressed the latter issue in *Davis v. Hinde* (1986), 141 Ill. App. 3d 664, 490 N.E.2d 1049, which was decided between *Sears* and *Trower*. In *Davis*, the defendant requested plaintiff's counsel to list the names of every client represented by his firm who had also been treated by plaintiff's treating physicians. Defendant's stated purpose was to try to establish the existence of a lucrative business relationship between plaintiff's retained law firm and other clients of that firm receiving treatments for soft-tissue injuries. Once established, defendant would argue that the opinion of the testifying doctor was the natural and expected result of his employment. Asserting both the attorney-client and physician-patient privileges, plaintiff's attorney declined to turn over the requested material, even though the court ordered him to do so and eventually imposed sanctions on plaintiff for failing to comply with the order. See *Davis*, 141 Ill. App. 3d at 665-66, 490 N.E.2d at 1050.

This court reversed the sanctions. The court noted that while the identity of a lawyer's client is typically outside the scope of the attorney-client privilege, the names sought by defendant were also names of patients of plaintiff's physicians. Thus, in light of *Sears*, the court examined whether disclosure would violate the physician-patient privilege or result in subtrials remote from the case before it. *Davis*, 141 Ill. App. 3d at 666, 490 N.E.2d at 1051.

The court concluded that the disclosure ordered by the trial court would violate the physician-patient privilege. Although disclosure of the names by themselves might be permissible, the record indicated that defendant sought the names of patients who had particular injuries. Such disclosure would necessitate examining the treatment records of nonparty patients, which would violate the privilege in the context of a civil malpractice case. *Davis*, 141 Ill. App. 3d at 666-67, 490 N.E.2d at 1051, discussing *Parkson v. Central Du Page Hospital* (1982), 105 Ill. App. 3d 850, 435 N.E.2d 140.

The court also concluded that the disclosure ordered by the trial court would result in subtrials remote from the case before it, stating:

"Although it is arguable that the revelation of an arrangement between attorneys and doctors, such as defendant suggests, would be in the public interest, the matter is collateral to the issue of plaintiff's immediate action. Furthermore, even if the names were supplied, other patients contacted and their waivers and records obtained, it would be impossible to determine from a cursory questioning of the doctors either at a deposition or at trial whether each particular case varied in any way from plaintiff's problem so as to validly establish the generalization defendant seeks. In our opinion, this would necessarily result in the time consuming subtrials remote from the subject of the lawsuit as warned against by the *Sears* court. We conclude, therefore, that the request for production in its present form was too broad and that for the purpose of showing bias and attacking credibility it should have been limited to the number and frequency of referrals from plaintiff's attorney and any financial benefit derived therefrom." (*Davis*, 141 Ill. App. 3d at 667-68, 490 N.E.2d at 1052.)

This court now turns to an examination of the orders at issue in this case. First, there is the order dated October 7, 1988, which grants the motion to compel filed by defendant on September 29, 1988. The order reads as follows:

"This cause coming to be heard on defendant Pfizer's motion to compel, due notice having been given, oral argument having been heard and the Court being fully advised in the premises, defendant Pfizer's motion to compel is hereby granted."

As mentioned previously, the motion to compel sought:

"All documents in the possession of plaintiff, plaintiff's counsel or any other person who is plaintiff's agent or representative that reflect, refer or relate to Lawrence Tomasi, M.D., including but not limited to documents reflecting fees paid or

bills received by plaintiff or plaintiff's counsel in this or other matters and transcripts of or affidavit ever given by Dr. Tomasi.''

The motion further requested that plaintiff's counsel:

"Identify by title and case number any other litigation in which he [Dr. Tomasi] has been consulted or testified as an expert, at trial or in deposition, specifying those matters to which he testified which are the same or similar to the matters involved in this lawsuit (Pfizer Supplemental Rule 220 Interrogatories, No. 1(f))."

■■ This order, as written, merely refers back to the motion. The motion, as drafted, is of the type disapproved by this court in *Monier*: it broadly requests "all documents in the possession of plaintiff, plaintiff's counsel or any other person who is plaintiff's agent or representative that reflect, refer or relate to" plaintiff's expert. Moreover, the motion expressly seeks documents outside the immediate cause of action without limitation. Hence, the discovery requested and ordered was overbroad. *Monier*, 66 Ill. App. 2d at 487, 213 N.E.2d at 434.

Defendant has urged this court to disregard the actual terms of this order and look instead to the transcript of the October 7, 1988, hearing which is included in the record on appeal. Even if this court were willing to undertake such an examination, it would not aid defendant. At the hearing, defendant asserted that it did not seek the names of patients or clients that had not filed lawsuits or the names of cases in which Dr. Tomasi had merely been a consulting expert. Defendant further asserted that it did not seek privileged information and that, to the extent that the disclosure of nonparty patient or client names would violate privileges, they could be redacted.

The transcript, however, does not appear to indicate that the trial court accepted this characterization of the motion or relied on this characterization in reaching its decision. Rather, the record indicates that the trial court approved discovery concerning how often the expert testified, what remuneration he received, which cases were tried and which were settled and the expert's qualifications. The trial court described defendant's motion as going a "little far afield," but nonetheless proceeded to allow discovery of the subject matter of cases involving the expert, the names of the individuals involved and that material which might be discovered from the record in those cases. The court expressly barred discovery of work product, but expressly allowed discovery of the names of cases in which Dr. Tomasi was a "consulting expert." Finally, the record reflects that the court decided

that "the whole theory of privilege is something that can be determined by the trial judge if it is necessary to go to trial on the case."

■ Defendant's reliance on this transcript would be unavailing before this court for two reasons. First, the scope of discovery that would be approved by the trial court would conflict not only with the broad language employed in defendant's motion to compel, but also with defendant's characterization of the motion at the hearing. This conflict may have made it difficult for plaintiff to comply with the order, and the first purpose of the specificity requirement is that a party should be put reasonably on notice as to what materials should be turned over to the opposing party. *Monier*, 35 Ill. 2d at 356, 221 N.E.2d at 414.

■ Second, the transcript indicates that the trial court intended to allow discovery that would go beyond that which is permitted by the supreme court rules. For example, the trial court explicitly told plaintiff's counsel to turn over the names of cases in which Dr. Tomasi was employed as a consulting expert, whereas the supreme court rules state in relevant part:

> "The *identity*, opinions and work product of consulting experts are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means." (Emphasis added.) (134 Ill. 2d R. 220(c)(5).)

There is nothing in the record in this case indicating that defendant was required to show exceptional circumstances before the court ordered this discovery. Moreover, the trial court's statements to the effect that claims of privilege could be decided later, if the case had to go to trial, runs contrary not only to the second purpose of the specificity requirement established in *Monier*, but also to the express language of Rule 201(b)(2). *Monier*, 35 Ill. 2d at 356, 221 N.E.2d at 414; 134 Ill. 2d R. 201(b)(2).

In sum, regardless of whether this court relied merely on the October 7, 1988, order and the motion to compel or whether we relied on the record of proceedings, the order did not conform to either of the purposes of the specificity requirement.

We next turn to an examination of the order issued on January 6, 1989, which stated in relevant part that

> "unless all of the material and information that is listed in paragraph 3 of defendant Pfizer's Rule 219 motion *** is produced for inspection and copying by January 11, 1989, then all claims

against Pfizer Inc. in the above-captioned lawsuit are dismissed with prejudice."

As mentioned earlier, defendant's Rule 219 motion sought:

"a. Documents that show how much money Dr. Tomasi has earned from Goldberg & Goldberg [plaintiff's counsel] since he began consulting with Goldberg & Goldberg sometime in the 1970's, whether he earned those fees as a treating physician, consulting expert or expert witness. Such documents include IRS 1099 forms, cancelled checks, check stubs and any other records of payment or requests for payment.

b. Identification of the cases in which Dr. Tomasi has been disclosed by Goldberg & Goldberg as an expert witness and, for such cases, providing answers to interrogatories posed about Dr. Tomasi and his opinions, all transcripts of Dr. Tomasi's testimony and all affidavits signed by Dr. Tomasi.

c. The number of cases on which Dr. Tomasi has consulted to Goldberg & Goldberg whether as a treating physician, consulting expert or expert witness; and

d. The number of patients referred to Dr. Tomasi by Goldberg & Goldberg."

On its face, the Rule 219 motion appears to be far more limited in scope than the previous motion to compel. It appears that this motion seeks nonprivileged information concerning the fees paid to Dr. Tomasi, information on the public record concerning Dr. Tomasi's participation as a testifying witness in Goldberg & Goldberg cases, the number of cases in which Dr. Tomasi participated in any capacity and the number of referrals Dr. Tomasi received from Goldberg & Goldberg.

■ The fact that the Rule 219 motion appears to be more limited in scope, however, again raises the question of whether plaintiff's counsel was put on sufficient notice of which information defendant sought, as this second request is far different from the first request. We note that subparagraphs 3(a), (c) and (d) of the Rule 219 motion do not purport to limit discovery to cases which are already filed and that there is no reference to permitting the trial court or plaintiff's expert or attorney to redact information which may violate the attorney-client or physician-patient privilege, even though defendant asserts that the request should be read that way. More importantly, defendant's request for answers to interrogatories, transcripts of testimony and affidavits run afoul of the prohibition of subtrials enunciated in *Sears* and *Davis*. (*Davis*, 141 Ill. App. 3d at 667-68, 490 N.E.2d at 1052; see *Sears*, 102 Ill. 2d at 407-08, 466 N.E.2d at 213.)

Moreover, the request for billing documents seeks discovery for a period of at least 11 and perhaps as much as 20 years. Such discovery may be considered overburdensome in light of *Bua* and *Trower*. (*Cf. Bua*, 37 Ill. 2d at 193-94, 226 N.E.2d at 14 (disapproving request spanning five years of documents where production would be expensive, laborious and disruptive); *Trower*, 121 Ill. 2d at 218, 520 N.E.2d at 300 (approving cross-examination on expert's income for two previous years).) Defendant asserts in its brief that the billing documents are easily obtainable. However, the record citation provided by defendant refers to a deposition of Dr. Tomasi, whereas the Rule 219 motion is directed toward plaintiff's counsel.

In sum, while the Rule 219 motion was an improvement over the initial discovery request, it violated *Davis* at the very least. Plaintiff's counsel was therefore justified in refusing to comply with the second order, particularly where counsel was given only five days to comply and counsel sought the alternative sanction of contempt in order to test the court's decision.

■■ The second issue on appeal is whether the trial court erred in dismissing the claims against defendant for plaintiff's failure to comply with discovery orders. Supreme Court Rule 219(c) (134 Ill. R. 219(c)) provides that where a party unreasonably refuses to comply with discovery rules or orders, the trial court may enter "such orders as are just" to remedy the situation. The rule contains a nonexclusive list of sanctions available to the trial court, such as staying the proceedings, barring testimony, striking claims or defenses, awarding fees and costs, instituting contempt proceedings, entering a default judgment and dismissing the action. The imposition of sanctions is a matter largely within the discretion of the trial court and should not be disturbed on review unless the order constitutes an abuse of discretion, such as where the record shows that the party's conduct was not unreasonable or where the sanction itself is not just. *Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191, 196, 533 N.E.2d 22, 25.

■■ Because the purpose of these sanctions is to effect discovery, rather than to punish the dilatory party (*Jones v. Healy* (1981), 97 Ill. App. 3d 255, 422 N.E.2d 904), a "just order" under Rule 219(c) is one which, to the degree possible, ensures both the accomplishment of discovery and a trial on the merits (*White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24). For these reasons, default judgment or dismissal of the action, being the most drastic sanctions, are ones which courts are reluctant to impose and should be imposed only as a last resort in cases where the actions of the party demonstrate a deliberate, contumacious and unwarranted disregard of

the trial court's authority, all other enforcement powers at the court's disposal have failed to advance the litigation, and which may be set aside where a trial on the merits could be had without hardship or prejudice. (*Kubian*, 178 Ill. App. 3d at 196-97, 533 N.E.2d at 25.) However, once the trial court imposes a sanction for noncompliance, the sanctioned party has the burden of establishing that the noncompliance was reasonable or justified by extenuating circumstances or events. *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 402 N.E.2d 352.

Defendant argues that plaintiff's counsel has shown a deliberate and continuing disregard of a whole series of court orders, purportedly supported by an "exhibit" which appears in defendant's brief. The record contains an order barring expert witnesses, which was subsequently vacated by the trial court. The record of the hearing on defendant's Rule 304(a) motion (134 Ill. 2d R. 304(a)) contains the trial court's statement that "[t]his is not the first time that this particular issue has come up *** we have talked about this particular matter many, many times."

Defendant, however, did not indicate in its purported "exhibit" where the trial court's reasons for granting new discovery orders can be found in the record. Moreover, the transcript of proceedings of January 6, 1989, indicates that the court, before issuing the order giving plaintiff's counsel five days to comply with its previous discovery order, stated that "[t]he order's been in effect since November" and does not explicitly refer to any other order. The court's statement suggests that it was concerned that plaintiff's counsel comply with the October 7, 1988, order. Although defendant argued that "after literally years of rankling [*sic*]" plaintiff had only produced one "half-baked witness" against defendant, the court refused to grant the immediate dismissal with prejudice defendant sought.

■ In sum, the record is unclear as to whether the trial court granted the dismissal due to the failure to comply with 10 discovery orders or only two. At this juncture we note that plaintiff's counsel had sought a contempt citation in order to appeal the trial court's decisions regarding discovery; such a citation can be an appropriate method of testing the validity of a discovery order. (*E.g., Bua*, 37 Ill. 2d at 189, 226 N.E.2d at 12.) If a contempt citation had issued in this case, the trial court would have been required to issue an order setting forth specific grounds to support its action. (*E.g., Hellige v. Hellige* (1977), 50 Ill. App. 3d 209, 365 N.E.2d 220.) Keeping in mind that a "just order" under Rule 219(c) must, to the greatest extent possible, ensure both discovery *and* a trial on the merits, a trial court

cannot choose the more drastic path of dismissing a claim without giving specific reasons subject to review. The record in this case does not support the dismissal order.

For all of the aforementioned reasons, we reverse the judgment of the circuit court of Cook County and remand the case for further proceedings.

Reversed and remanded.

MANNING, P.J., and BUCKLEY, J., concur.