2024 IL App (4th) 231307

NO. 4-23-1307

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 3, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LORRIE WHEAT, Special Administrator of the Estate of Eugene Wheat, Deceased, | ) ) | Appeal from the Circuit Court of |
| Plaintiff, | ) | McLean County |
| v. | ) | No. 18L4 |
| PATRICK MURPHY, | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| (Advocate Health and Hospitals Corporation, d/b/a | ) | |
| Advocate BroMenn Medical Center, | ) | |
| Intervenor-Appellee, | ) | |
| and | ) | Honorable |
| James P. Ginzkey, | ) | Rebecca S. Foley, |
| Appellant). | ) | Judge Presiding |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Zenoff and Vancil concurred in the judgment and opinion.

**OPINION**

¶ 1        This appeal arises from attorney James P. Ginzkey's representation of plaintiff, Lorrie Wheat, as special administrator of the estate of Eugene Wheat, in a medical malpractice lawsuit against defendants, (1) Dr. Patrick Murphy and (2) Advocate Health and Hospitals Corporation, d/b/a Advocate BroMenn Medical Center (Advocate), following Eugene's death while he was a patient at Advocate in May 2016.

¶ 2        In November 2019, Ginzkey provided documents to plaintiff's expert witness, Dr. Timothy Sanborn, that the trial court had previously declared privileged (the discovery order) under the Medical Studies Act (735 ILCS 5/8-2101 to 8-2105 (West 2018)). Defendants then filed

motions for sanctions, which the trial court granted, (1) finding that Ginzkey's conduct was not in good faith, (2) ordering Sanborn barred from testifying as an expert witness, and (3) in November 2020, awarding $12,000 in fees to Murphy and $20,000 in fees to Advocate to be paid by Ginzkey.

¶ 3     In November 2023, the trial court entered a final judgment order, dismissing with prejudice all causes of action in the underlying case as to all parties. (We note that this appeal concerns only Ginzkey's conduct and the court's ordering him to pay attorney fees.)

¶ 4     Ginzkey appeals, arguing the trial court abused its discretion by awarding attorney fees to defendants because (1) an award of attorney fees in addition to barring Sanborn's testimony was unjust, (2) attorney fees could not be awarded to Advocate because it voluntarily incurred the fees after being dismissed as a party with prejudice, and (3) the attorney fee award violated his right to due process. We disagree with Ginzkey's arguments and affirm the trial court's order.

¶ 5                          I. BACKGROUND

¶ 6                      A. *Murphy v. Advocate*

¶ 7     In May 2016, Eugene was admitted to Advocate, complaining of chest pain, and he was treated there by Murphy, a specialist in cardiology. Eugene died at the hospital after undergoing a cardiac catheterization procedure performed by Murphy. Later, Advocate convened a peer review group, the Intraprofessional Conference Committee (ICC), to investigate the care Murphy provided to Eugene and other patients. The ICC generated numerous documents during its investigation, including (1) a letter from Dr. Mark Hansen, a participant in the peer review group, to Murphy dated June 1, 2016, and (2) the report of the ICC (collectively, the peer review documents), both of which described the care Eugene received from Murphy. The ICC investigation resulted in the suspension of Murphy's hospital privileges.

¶ 8     In June 2016, Murphy filed a lawsuit against Advocate, challenging his suspension.

Murphy v. Advocate, No. 16-CH-122 (Cir. Ct. McLean County). (During those proceedings, the peer review of Murphy was relevant to the case and the peer review documents were part of the record in the trial court and later in the appellate court.) Thereafter, Murphy filed motions for declaratory and injunctive relief, which the court denied. Murphy appealed, and, in March 2017, this court reversed the court's decision. *Murphy v. Advocate Health & Hospitals Corp.*, 2017 IL App (4th) 160513, 74 N.E.3d 154. We note that the background and analysis sections in that case discussed information contained in (1) the Advocate letter to Murphy and (2) the ICC report.

¶ 9                                    B. *Wheat v. Advocate & Murphy*

¶ 10                          1. *The Underlying Litigation and Misconduct*

¶ 11         In January 2018, Ginzkey, as counsel for plaintiff, filed a medical malpractice complaint against both Murphy and Advocate, alleging, (1) Murphy negligently treated Eugene, resulting in Eugene's death, and (2) Advocate negligently maintained the privileges and credentials of Murphy. Written discovery was protracted by disputes over what should be disclosed and what should not be disclosed, primarily regarding documents related to the peer review, which Advocate asserted were privileged.

¶ 12         In November 2018, Advocate submitted 41 documents to the trial court for *in camera* review to determine whether they were privileged, including the peer review documents.

¶ 13         In February 2019, the trial court issued an order (discovery order) finding that some of the documents were privileged, some documents were partially privileged, and that some documents were not privileged under the Medical Studies Act. Regarding the peer review documents, the court found that (1) the letter from Hansen was partially privileged and (2) the ICC report was privileged. The court noted that (1) the "letter includes both the results of the peer review process (which are discoverable) and the recommendations and internal conclusions of the

peer review process (which are not discoverable)" and (2) the ICC report was "privileged and confidential under the Medical Studies Act, as it also contains recommendations arising from the peer review process." In addition, the court quashed two subpoenas that Ginzkey had served upon two doctors that had participated in the peer review process.

¶ 14 In March 2019, the trial court entered an agreed protective order between the parties pursuant to Illinois Supreme Court Rule 201(c)(1) (eff. July 1, 2014) that limited the use of documents the court found were not privileged in the discovery order. The protective order specified that it "shall survive the final conclusion of this litigation and shall continue in full force and effect, and the Court shall retain jurisdiction to enforce" the protective order.

¶ 15 In November 2019, unbeknownst to defendants, Ginzkey sent the peer review documents to his expert witness, Sanborn. Ginzkey shared the documents with Sanborn through an e-mail in which he stated, "As a result of his mistreatment of Eugene Wheat in May of 2016 Dr. Murphy's privileges at Advocate were revoked per the attached." The attached file was entitled "May 2016 Peer Review" and contained the peer review documents.

¶ 16 In January 2020, Ginzkey filed plaintiff's Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) disclosure for Sanborn, indicating that Sanborn's opinions were based on the peer review documents.

¶ 17 In February 2020, Advocate reached a settlement agreement with plaintiff and the trial court dismissed the action against Advocate with prejudice.

¶ 18 In June 2020, Murphy requested copies of plaintiff's November 2019 and January 2020 draft Rule 213(f)(3) disclosures of Sanborn. After receiving and reviewing the disclosures, Murphy learned that Ginzkey had sent unredacted copies of the peer review documents to Sanborn.

¶ 19 In July 2020, Murphy filed an emergency motion for temporary restraining order

and to bar Sanborn's testimony. The next day, after Murphy informed Advocate that Ginzkey had sent those documents to Sanborn, Advocate filed a petition to intervene in order to file its own motion for injunctive relief similar to Murphy's motion.

¶ 20     The trial court conducted a hearing on Murphy's emergency motion and ordered Ginzkey to "not further disclose any material in [his] possession regarding this case that is privileged under the Medical Studies Act."

¶ 21     In August 2020, Ginzkey filed a written response to Murphy's motion, stating that he had "[a]bsent mindedly" sent the documents to Sanborn, and doing so "was the product of inattention, not willful or intentional misconduct." That same month, following a hearing, the trial court granted Murphy's motion, as well as Advocate's motion to intervene, stating as follows:

> "The Court finds that Advocate should be allowed to intervene as a matter of right under [section 2-408 of the Code of Civil Procedure (Code) (735 ILCS 5/2-408(a)(2) (West 2020))], finding that it has met the interest requirement insofar as it has an interest in its records generated under the Medical Studies Act and the peer review process. Plaintiff argues that Advocate will not be bound by any ruling addressing Dr. Murphy's Motion to Bar. However, section 2-408 requires only that a party seeking to intervene will or may be bound. And it is well settled in this state that an enforceable right fulfills that requirement. Again, citing the *John Hancock* case. So, that enforceable right is seeking to protect their records generated under the peer review process.
>
> The Court further finds that Advocate's interests are not adequately represented by the existing parties. That factor has nothing to do with skill, but instead is comparing the interests of Advocate and Dr. Murphy. *** Advocate also

has an interest in protecting its peer review process as a whole, which an individual physician may not have. And *** the Court's concerns are some of what [Advocate's counsel] had referenced, the confidentiality of the process. Ultimately, the goal in the process is underlying patient safety.

Even if Advocate does not have a right to intervene, the Court finds it has a permissive right to intervene. In support of that finding, the Court notes that Advocate's anticipated motion for [a temporary restraining order (TRO)] and for sanctions in this cause of action have a question of law in common; namely, how to address Plaintiff's alleged violation of the Court's prior order in this case; that Advocate has an enforceable right and more than a general interest in the subject matter. The Court further finds that Advocate's request to intervene was timely filed.

The Court does not find a right to intervene under [section] 408(a)(3). *** Here, the property conceivably falls under this section, but the Court believes the intervention is more appropriate under (a)(2) and/or (b)(2). So, the Court will grant the Petition to Intervene."

¶ 22    After Advocate was allowed to intervene, Advocate filed a motion for sanctions, permanent injunctive relief, and civil contempt.

¶ 23        2. *The Trial Court's Permanent Injunction and Sanctions Order*

¶ 24    In October 2020, the trial court entered an order for permanent injunction and sanctions against Ginzkey. Regarding the sanctions, the court noted that Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) authorized the court to "impose a sanction upon any party who unreasonably refuses to comply with any provision of this Court's discovery rules or any order

entered pursuant to these rules." The court found that both Advocate and Murphy established the six factors provided by the Illinois Supreme Court in *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 692 N.E.2d 286 (1998)—namely, (1) surprise to the adverse parties, (2) prejudicial effect of the evidence, (3) nature of the evidence, (4) diligence of the parties, (5) timeliness of the objection, and (6) the offending party's good faith.

¶ 25    In summary, the trial court found that (1) both Murphy and Advocate were surprised by Ginzkey's dissemination of the documents after the court ruled on the documents' confidentiality; (2) Advocate was prejudiced by the ongoing dissemination of the peer review materials and testimony by Ginzkey's expert was contaminated by the materials; (3) the materials were privileged and the evidence went "to the heart of the case"; (4) Advocate and Murphy were diligent, seeking the assistance of the court once they determined Ginzkey violated the February 2019 order; and (5) Advocate and Murphy sought assistance from the court within a reasonable amount of time.

¶ 26    Regarding the good faith factor, the trial court stated the following:

"The court finds that the Plaintiff failed to act in good faith. Plaintiff's counsel is a veteran trial attorney who deals with confidential records on a daily basis given his concentration in medical malpractice litigation. Mr. Ginzkey has asked this Court on more than one occasion to require defense counsel to enter [HIPAA] orders on a doctor-by-doctor basis with his pre-approval due to concerns over disclosure of his client's medical records.

The point the Court is attempting to make is this: Plaintiff's counsel is experienced. It is assumed there are procedures in place at his office to deal with those records that are deemed privileged and/or confidential. He has participated in

extensive motion practice before this Court regarding the Medical Studies Act.

> Before forwarding these materials to Dr. Sanborn, [Mr. Ginzkey] had an opportunity and an obligation to ensure that they could be shared. Before filing the opinion witness disclosure, he had another opportunity and an obligation to ensure that the filing was based upon materials that were not prohibited by this Court. His office continued to share these materials in public filings with the Circuit Clerk's office when, in the era of E-filing, a simple check of the confidential box would ensure the materials were not available to the public."

¶ 27 Ultimately, the trial court barred Sanborn from testifying, granted leave to Advocate and Murphy to provide evidence of attorney fees incurred as a result of the wrongful disclosure, and ordered plaintiff, Ginzkey, and Sanborn to "permanently destroy any and all materials in their possession which were deemed privileged by [the discovery order]."

¶ 28 Later, defendants submitted invoices for attorney fees to the trial court for *in camera* review—Advocate's invoices totaling $27,252.50 and Murphy's invoices totaling $17,145. Information subject to attorney client privilege was redacted from the invoices shared with Ginzkey. (The record does not show that Ginzkey requested an evidentiary hearing on the attorney fees or objected to his receiving redacted invoices.) In November 2020, the court awarded $20,000 in fees to Advocate and $12,000 in fees to Murphy. The court required those fees to be personally paid by Ginzkey.

¶ 29 The next day, Ginzkey appealed the trial court's order. The docketing statement for that appeal indicated that the general issue to be raised was the "[p]ropriety of award of attorney fees as sanctions." This court dismissed the appeal for lack of appellate jurisdiction because the appeal was from an interlocutory discovery order of the trial court that was not otherwise

- 8 -

appealable to this court either directly or under applicable exceptions contained within the Illinois Supreme Court rules. *Wheat v. Murphy,* No. 4-20-0616 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)). (The record does not show that Ginzkey challenged the reasonableness of the fees in the trial court.)

¶ 30                                    3. *Ginzkey's Censure*

¶ 31        In November 2020, Ginzkey was referred to the Illinois Attorney Registration and Disciplinary Commission (ARDC) for review of his conduct. The ARDC Hearing Board determined that Ginzkey's disclosure of the documents was knowing and intentional and recommended he be censured. The ARDC Review Board agreed. *In re Ginzkey*, Ill. Attorney Registration & Disciplinary Comm'n Board No. 2021-PR-00031 (Dec. 29, 2022).

¶ 32        In May 2023, the Illinois Supreme Court censured Ginzkey as recommended by the ARDC Review Board. *In re Ginzkey*, Ill. S. Ct., M.R. 031643 (May 16, 2023).

¶ 33                                    4. *Final Judgment*

¶ 34        In November 2023, the trial court entered a final judgment dismissing the case after Murphy and plaintiff reached a settlement agreement.

¶ 35        This appeal followed.

¶ 36                                    II. ANALYSIS

¶ 37        Ginzkey appeals, arguing the trial court abused its discretion by awarding attorney fees to defendants because (1) an award of attorney fees in addition to barring Sanborn's testimony was unjust, (2) attorney fees could not be awarded to Advocate because it voluntarily incurred the fees after being dismissed as a party with prejudice, and (3) the attorney fee award violated his right to due process. We disagree with Ginzkey's arguments and affirm the trial court's order.

¶ 38                          A. The Appropriateness of the Sanctions

- 9 -

¶ 39    Ginzkey contends that the imposition of attorney fees as sanctions amounts to an unjust punishment for his conduct because (1) he did not intentionally share the peer review documents, (2) defendants did not follow Illinois Supreme Court Rule 201(k) (eff. July 1, 2014) before requesting sanctions, and (3) Advocate was not prejudiced by the dissemination of the documents. He emphasizes that a "just" discovery sanction has been defined as one that, to the degree possible, ensures both discovery and trial on the merits. *Martinez v. Pfizer Laboratories Division*, 216 Ill. App. 3d 360, 373, 576 N.E.2d 311, 320 (1991).

¶ 40                    1. *The Applicable Law and Standard of Review*

¶ 41                         a. The Medical Studies Act

¶ 42    The Medical Studies Act provides as follows:

"All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of *** committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, *** the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services ***." 735 ILCS 5/8-2101 (West 2018).

¶ 43     The Medical Studies Act further provides that such privileged material "shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person." *Id.* § 8-2102. "[T]he [Medical Studies] Act protects documents that arise from the workings of a peer-review committee [citation] and that are an integral part but not the result of the peer-review process." *Ardisana v. Northwest Community Hospital, Inc.*, 342 Ill. App. 3d 741, 746-47, 795 N.E.2d 964, 969 (2003).

¶ 44     b. Sanctions Pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002)

¶ 45     Rule 219(c) provides, in relevant part, as follows:

"If a party, or any person at the instance of or in collusion with a party, unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

\* \* \*

(iv) That a witness be barred from testifying concerning that issue;

\* \* \*

In lieu of or in addition to the foregoing, the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty."

¶ 46　　　　In determining the appropriate sanctions, the trial court must consider the following factors:

> "(1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence." *Shimanovsky*, 181 Ill. 2d at 124.

No single factor is determinative. *Id.*

¶ 47　　　　　　　　　　　　c. The Standard of Review

¶ 48　　　　"Under Rule 219(c), the imposition of sanctions is largely a matter within the discretion of the trial court and will not be disturbed on review unless the sanctions constitute an abuse of discretion such as where the sanctioned party's conduct was not unreasonable or where the sanction itself is not just." (Internal quotation marks omitted.) *Koppel v. Michael*, 374 Ill. App. 3d 998, 1004, 871 N.E.2d 888, 894 (2007). A "just" discovery sanction has been defined as one that, to the degree possible, ensures both discovery and trial on the merits. *Shimanovsky*, 181 Ill. 2d at 123; *Martinez*, 216 Ill. App. 3d at 373. A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view. *Maniscalco v. Porte Brown, LLC*, 2018 IL App (1st) 180716, ¶ 29, 127 N.E.2d 786.

¶ 49　　　　In order for us to determine whether the trial court abused its discretion, we examine "the criteria upon which the trial court relied in making its determination of an appropriate sanction." *Shimanovsky*, 181 Ill. 2d at 123.

¶ 50　　　　　　　　　　　　2. *This Case*

¶ 51　　　　First, Ginzkey maintains that his violation of the trial court's discovery order was

not deliberate and thus did not warrant an extreme penalty such as attorney fees. We disagree with (1) Ginzkey's characterization of the fee award as punitive and (2) his assertion that his conduct was undeserving of sanctions.

¶ 52    The record shows that the trial court carefully assessed the *Shimanovsky* factors to determine whether sanctions were appropriate and what the severity of those sanctions should be. In crafting its sanctions order, the court explicitly considered the purpose of discovery sanctions, stating, "As *Shimanovsky* instructs, a just order, [']to the degree possible ensures both discovery and a trial on the merits.['] " After considering the circumstances of Ginzkey's misconduct, the court exercised its discretion pursuant to Rule 219(c) to (1) bar Sanborn's testimony, whose opinions were irrevocably tainted by the wrongful disclosure of privileged information, to ensure a fair trial on the merits and (2) order Ginzkey to personally pay attorney fees incurred as a result of his misconduct to ensure his future compliance with the discovery order. In so ordering, the court emphasized that Ginzkey had no legitimate excuse for why he violated the discovery order given his experience and expertise in medical malpractice litigation.

¶ 53    Whether Ginzkey intentionally violated the discovery order—as the Illinois Supreme Court concluded—or simply did not review the materials he was disseminating is of no consequence to the appropriateness of the trial court's sanctions in this case because either scenario shows Ginzkey's disregard of (1) the court's authority, (2) the purpose of the Medical Studies Act, and (3) the parties' rights, time, and resources. That is to say, Ginzkey clearly did not take his obligation to follow the discovery order seriously.

¶ 54    As the First District explained in *Locasto v. City of Chicago*, 2014 IL App (1st) 113576, ¶ 27, 6 N.E.3d 435, sanctions are used "to combat abuses of the discovery process and maintain the integrity of the court system." See *Gonzalez v. Nissan North America, Inc.*, 369 Ill.

App. 3d 460, 464, 860 N.E.2d 386, 390 (2006) (sanctions imposed by a court for discovery violations "must be just and proportionate to the offense").

¶ 55        Second, Ginzkey invokes Illinois Supreme Court Rule 201(k) (eff. Mar. 17, 2023), which requires that "[t]he parties shall facilitate discovery under these rules and shall make reasonable attempts to resolve differences over discovery." He argues that defendants did not comply with Rule 201(k) because he was "never given the chance to discuss the matter with defense counsel in an attempt to determine if there was a possible resolution short of a motion for sanctions." However, Ginzkey's intentional conduct of disclosing privileged documents was not a "discovery dispute," such as a difference of opinion regarding discoverable materials or a party's slow responses to discovery requests. Instead, the peer review materials had been a point of contention between the parties at the onset of the case, which was later settled by the trial court's discovery order.

¶ 56        Given Ginzkey's experience in this area of law, compliance with that order should have been elementary. Once that order had been violated, no reason existed for defendants to seek "to resolve differences" through Rule 201(k) rather than immediately filing for sanctions to prevent the further use of privileged documents by Ginzkey. See *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 622, 872 N.E.2d 431, 436 (2007) ("[C]ompliance with Rule 201(k) is not required when, as in this case, a party has disregarded discovery orders issued by the circuit court."); *Gayton v. Levi*, 146 Ill. App. 3d 142, 150, 496 N.E.2d 1045, 1050 (1986).

¶ 57        Last, Ginzkey argues that the award of fees to Advocate was an abuse of discretion because Advocate no longer had an interest in the case and was not prejudiced by the disclosure of the peer review documents. We address this argument below (*infra* ¶¶ 64-70).

¶ 58                              B. Advocate's Intervention

¶ 59    Ginzkey contends that Advocate could not be awarded attorney fees because the trial court erred by allowing Advocate to intervene in this case after being dismissed with prejudice—in other words, Advocate voluntarily incurred attorney fees because of its inappropriate and unnecessary intervention. Specifically, he argues that intervention under subsections (a)(2), (a)(3), and (b)(2) of section 2-408 of the Code (735 ILCS 5/2-408(a), (b) (West 2020)) was inappropriate because (1) Advocate could not be bound by the court's orders in the suit, (2) Advocate was no longer a party, and (3) Sanborn would not testify against Advocate because of the dismissal with prejudice. Further, Ginzkey claims that Advocate had no interest in protecting the peer review documents because it sold the medical center and those peer review procedures were "likely not in place."

¶ 60                            1. *The Applicable Law*

¶ 61    Section 2-408 of the Code (*id.* § 2-408) provides the following:

> "(a) Upon timely application anyone shall be permitted as of right to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or a court officer.

> (b) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common."

- 15 -

¶ 62      The decision to allow or deny intervention, whether permissively or as of right, is a matter of sound judicial discretion that will not be reversed absent an abuse of that discretion. *Flood v. Richey*, 2016 IL App (4th) 150594, ¶ 15, 61 N.E.3d 1163.

¶ 63                                    2. *This Case*

¶ 64      We note that Ginzkey is not appealing Advocate's intervention; instead, Ginzkey argues that Advocate would not have incurred attorney fees because of Ginzkey's misconduct had it not been allowed to intervene. Regardless, because we conclude that Advocate's intervention was not erroneous, Ginzkey's argument necessarily fails.

¶ 65      Despite Advocate's settlement with plaintiff and subsequent dismissal with prejudice, Advocate continued to have an interest in preventing the peer review documents from being further disseminated, whether through expert testimony, public court filings, or additional transmission by Ginzkey. Advocate notes that under the Hospital Licensing Act, those documents were its "property and responsibility" (210 ILCS 85/6.17(b) (West 2020)) and were privileged under the Medical Studies Act as the trial court concluded when it issued the discovery order deeming the documents confidential and privileged.

¶ 66      "The purpose of the Medical Studies Act is to advance the quality of health care by ensuring that members of the medical profession effectively engage in a peer-review process." *Ardisana*, 342 Ill. App. 3d at 746 (citing *Richter v. Diamond*, 108 Ill. 2d 265, 269, 483 N.E.2d 1256, 1258 (1985)). Without the confidentiality provision of the Medical Studies Act, "physicians might be reluctant to engage in strict peer review due to a number of apprehensions: loss of referrals, respect, and friends, possible retaliations, vulnerability to tort actions, and fear of malpractice actions in which the records of the peer-review proceedings might be used." *Id.* (citing *Jenkins v. Wu*, 102 Ill. 2d 468, 480, 468 N.E.2d 1162, 1168 (1984)).

¶ 67    Advocate acted promptly when alerted of Ginzkey's discovery violation to intervene and enjoin further dissemination and use of the peer review documents, resulting in the sanction order to destroy those documents.

¶ 68    The trial court found that Advocate had a right to intervene under section 2-408(a)(2) of the Code because (1) Advocate had a strong interest in protecting the documents that may not have been adequately protected by Murphy and (2) orders regarding the dissemination of the peer review documents may bind Advocate in the future. The record does not refute those findings.

¶ 69    Ginzkey cites *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 78, 949 N.E.2d 731, for the proposition that the trial court lacks jurisdiction to consider discovery sanctions once the party has been dismissed with prejudice. However, this case is unlike *Maggi* because (1) the underlying case was ongoing and (2) Advocate petitioned to intervene. The discovery order, which determined whether the documents related to the peer review were privileged and confidential, was still in effect when Advocate intervened to enforce the order. Further, unlike in *Maggi*, once Advocate's petition to intervene was granted, the court had jurisdiction to entertain any motions that Advocate filed within the parameters of the court's grant of the petition to intervene, including motions for sanctions.

¶ 70    We note that Ginzkey contends in his brief that Advocate's sale of the physical hospital building, combined with his assumption that the "peer review process was likely not in place at [BroMenn] Regional Medical Center," nullified Advocate's interest in the documents. During oral arguments, Ginzkey mused about the terms of the sale agreement based on his own experience, but those musings lack any basis in the record. He also claimed that Advocate's ceasing operations in the Bloomington, Illinois, area shows that it had no interest in protecting the

peer review process it had in place. However, Ginzkey's arguments are mere speculation without legal analysis and are not well taken.

¶ 71                                    C. Due Process

¶ 72        Ginzkey also argues that his due process rights were violated because (1) he was not given an evidentiary hearing at which he could dispute defendants' evidence, (2) Advocate did not list hourly rates for the attorney fees, and (3) the invoices for attorney fees he received were "heavily redacted." Defendants respond that he forfeited this argument by failing to raise it in the trial court. We agree with defendants.

¶ 73        The record shows that the only reason Ginzkey did not participate in an evidentiary hearing is because he never told the trial court of his desire to have an evidentiary hearing on that issue. See *In re Parentage of J.W.*, 2017 IL App (2d) 160554, ¶ 31, 77 N.E.3d 734 (stating the failure to request an evidentiary hearing on attorney fees results in a waiver of one's right to the hearing); see also *Kroot v. Chan*, 2017 IL App (1st) 162315, ¶ 37, 89 N.E.3d 778 ("An evidentiary hearing is not always necessary in order to determine reasonable attorney fees. A nonevidentiary proceeding is proper so long as the trier of fact can determine from the evidence presented, including a detailed breakdown to fees and expenses, what amount would be reasonable, and the opponent is not deprived of the opportunity to present evidence.").

¶ 74        As evidence that he did not forfeit the issue, Ginzkey points to (1) his "Response to Advocate Motions," in which he objected to imposition of an attorney fee award and (2) the docketing statement for his premature appeal No. 4-20-0616 filed on December 1, 2020, in which he wrote that the general issues to be raise was the "[p]ropriety of award of attorney fees as sanctions." However, neither the motion nor the docketing statement raises an issue with the *amount* of the attorney fees awarded or the sufficiency of defendants' evidence regarding the

amount of fees they incurred as a result of his discovery violation.

¶ 75    Further, the parties submitted detailed unredacted invoices for the attorney fees incurred, which the trial court viewed *in camera*. Nothing in the record disputes the sufficiency of those invoices or undermines the court's decision to award attorney fees. The fact that an hourly rate was not provided does not render the fee award erroneous because trial courts have broad discretion to determine a reasonable fee award and may consider a wide array of evidence to make that decision, including the knowledge and experience of the trial judge. *BMO Harris Bank N.A. v. Towers*, 2015 IL App (1st) 133351, ¶ 43, 43 N.E.3d 1131.

¶ 76    Just as those invoices were sufficient to apprise the trial court of defendants' expenses due to Ginzkey's misconduct, they were likewise adequate for Ginzkey to challenge the sufficiency of that evidence in the trial court, as he has done in this appeal. He should have raised the issue of the invoices being redacted before the trial court and not for the first time on appeal. See *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 38, 123 N.E.3d 1271 ("Issues not raised before the trial court are deemed forfeited and may not be raised for the first time on appeal.").

¶ 77    Ginzkey next argues that because (1) the peer review documents had already been published by this court in *Murphy*, 2017 IL App (4th) 160513, and (2) that publication cannot be undone, the award of attorney fees could have been ordered only as a criminal sanction. In support of this contention, he cites *Edwards v. Pekin Memorial Hospital*, 2023 IL App (3d) 210005, ¶ 39, 232 N.E.3d 1018 (holding that a contempt sanction for an incurable violation was the "hallmark of criminal contempt"). However, as we discussed earlier (*supra* ¶¶ 51-56), the award of attorney fees here (1) was not punitive and (2) was proper under Rule 219(c) to compel compliance with the discovery order. We also note that "[t]he disclosure of any such information or data, whether

proper, or improper, shall not waive or have any effect upon its confidentiality, nondiscoverability, or nonadmissibility." 735 ILCS 5/8-2102 (West 2018).

¶ 78                                    D. The Trial Court's Findings

¶ 79        Last, we thank the trial court for its detailed orders summarizing both its findings and its reasoning for its discovery order and the order imposing sanctions.

>          "Any time a trial court serves as a fact finder, perhaps the single most important thing the court can do is say whom it believes and whom it does not. When the trial court favors us with such a finding, we are at the height of our deference to that court." *People v. Carter*, 2021 IL App (4th) 180581, ¶ 68, 188 N.E.3d 391.

We are grateful to the trial court for its detailed analyses.

¶ 80                                    III. CONCLUSION

¶ 81        For the reasons stated, we affirm the trial court's judgment.

¶ 82        Affirmed.

***Wheat v. Murphy*, 2024 IL App (4th) 231307**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 18-L-4; the Hon. Rebecca S. Foley, Judge, presiding. |
| **Attorneys for Appellant:** | James P. Ginzkey, of Ginzkey & Molchin, LLC, of Bloomington, for appellant. |
| **Attorneys for Appellee:** | Charles C. Hughes and Bret P. Coale, of Hughes Tenney Postlewait Coale, LLC, of Decatur, for appellee Patrick Murphy. Rachel J. Brandt, of Livingston, Barger, Brandt & Schroeder, LLP, of Bloomington, for other appellee. |