WASTE MANAGEMENT, INC., *et al.*, Plaintiffs-Appellants, v. INTERNA-
TIONAL SURPLUS LINES INSURANCE COMPANY *et al.*, Defendants-
Appellees and Cross-Appellants (Matthew W. Cockrell, Contemnor-Appel-
lant).

First District (4th Division)   No. 1—89—2636

Opinion filed September 13, 1990.

Rivkin, Radler, Dunne & Bayh, of Chicago (Bruce D. Drucker, Matthew W. Cockrell, and Victoria A. Walkowicz, of counsel), for appellants.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, Robert J. Franco, Michael A. Clarke, Scott O. Reed, Andrew G. Witik, James P. Moran, and Mark D. Roth, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

These cross-appeals from a contempt order concern the applicability of the attorney-client and work-product privileges to documents which are necessary to resolve an issue raised by the party claiming the privileges. The plaintiffs, Waste Management, Inc., and Chemical Waste Management, Inc. (insureds), owned and operated five hazardous waste disposal sites which were the subject of several lawsuits alleging that the sites had leaked toxic chemicals. The present cross-appeals concern only the litigation with respect to the site located in Furley, Kansas (the *Miller* litigation). The insureds defended and settled the lawsuit, then sought indemnity from the defendants, International Surplus Lines Insurance Company and American Special Risk Insurance Company (insurers), pursuant to an environmental impairment liability insurance policy. The insurers denied coverage, and both parties filed declaratory judgment actions requesting a determination of their respective rights and liabilities under the policy.

The two declaratory judgment actions were consolidated, and during the course of discovery, the insurers requested production of the files of the insureds' defense counsel in the underlying *Miller* litigation as well as the defense files in an action between the insureds and the prior owners of the site (the *Nunn* litigation). The insureds withheld certain of the documents based on the attorney-client and work-product privileges and provided the court with a detailed log of the withheld documents. The court ordered production of the files from the *Miller* litigation but denied the insurers' request for production of the files from the *Nunn* litigation. Counsel for the insureds subsequently informed the court that

the insureds would not comply with the court's order to produce the underlying defense files from the *Miller* litigation. Counsel was held in contempt and fined $100. The insureds have appealed the contempt citation, arguing that the materials ordered to be produced were privileged. The insurers have appealed from that portion of the order which refused to compel the production of the underlying defense files in the *Nunn* litigation. The insurers maintain that by suing the insurers for reimbursement for their costs in defending and settling the *Miller* litigation, the insureds have put the reasonableness of those costs at issue and may not claim a privilege with respect to communications or documents necessary to resolve that issue. The insurers also claim that the documents are discoverable by application of the common-interest doctrine and by virtue of the cooperation clause in the insurance contract.

The *Miller* litigation arose in January of 1982, when a class action was filed in the United States District Court for the District of Kansas alleging that the insureds owned and operated a hazardous waste site located in Furley, Kansas, and were responsible for personal injury and property damage from the migration of toxic wastes. The *Miller* plaintiffs alleged that the insureds were negligent in the selection and operation of the waste disposal facility, that they negligently violated various regulations governing the operation of hazardous waste disposal sites and that they concealed material facts concerning test results at the site. The plaintiffs sought to recover for nuisance, negligence, strict liability and trespass. The insureds retained counsel and defended the *Miller* action, which was eventually settled in 1986 for $2,400,000. During the pendency of the *Miller* litigation, the insureds were sued by the prior owners of the site for breach of a promissory note tendered as part of the sale of the site (the *Nunn* litigation). The insureds then counterclaimed against the prior owners, alleging negligent design, construction and operation of the site. The insureds obtained a judgment against the prior owners in the amount of $10,675,342.17 and subsequently settled with certain of the prior owners for $1,500,000.

In their declaratory judgment action, the insureds are seeking reimbursement of $2,150,000 in settlement cost and legal fees of $850,000 incurred in defending the *Miller* litigation. The insurance policy pursuant to which the insureds seek indemnity contains two provisions which are of particular importance to the instant appeal. First, the policy obligates the insurer only to indemnify covered expenses and does not impose upon the insurer a duty to defend. The policy provides, in pertinent part:

> "In consideration of the Premium and subject to the limitations, terms and conditions herein expressed, the Insurers agree to in-

demnify the Insured against all sums which the Insured shall be obligated to pay for damages by reason of the liability imposed upon the Insured by law ***.''

The policy specifically provides indemnification for the costs and expenses of litigation in defense of a covered claim. Second, the policy contains a cooperation clause, which provides:

"The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident ***.''

In their complaint against the insurers, the insureds alleged that they had "performed all of their obligations and conditions precedent" under the insurance policy. The insureds further alleged that the $850,000 in defense costs incurred in the *Miller* litigation were reasonably and necessarily incurred and that the $2,400,000 settlement was reasonable and necessary. The insureds alleged that the insurers were notified of the settlement in advance and agreed by letter not to contest its reasonableness. The insurers' answer denied coverage under the policy for various reasons and further denied that the insureds had met all of their obligations and conditions precedent. The insurers admitted sending a letter to the insureds agreeing not to contest the *Miller* settlement, but asserted that the letter was "based on information then known to it." In its declaratory judgment action, the insurers alleged that one of the reasons for its denial of coverage for the *Miller* litigation was the insureds' failure to advise the insurers of the *Nunn* litigation. The insurers alleged that their failure to report the *Nunn* litigation constituted a breach of the cooperation clause which required the insureds to cooperate with the insurers in enforcing any right of contribution or indemnity the insurers might have against third parties.

As stated earlier, the insurers sought discovery of the complete files of defense counsel in the *Miller* and *Nunn* litigation. The insureds withheld certain of the documents claiming that they were privileged from discovery pursuant to Supreme Court Rule 201(b)(2), which states:

"All matters that are privileged against disclosure on the trial, including privileged communications between a party or his agent

and the attorney for the party, are privileged against disclosure through any discovery procedure. Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." 107 Ill. 2d R. 201(b)(2).

■ The objectives of pretrial discovery are to enhance the truth-seeking process, to enable attorneys to better prepare for trial, to eliminate surprise and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties. (*Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 231-32, 443 N.E.2d 1125.) Disclosure is the object of all discovery procedures. (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, 374 N.E.2d 460.) Privileges, which protect certain matters from disclosure, are not designed to promote the truth-seeking process but rather to protect some "outside" interest other than the ascertainment of truth at trial. (E. Cleary, McCormick on Evidence §92, at 192 (2d ed. 1972).) For this reason, privileges are to be strictly construed as an exception to the general duty to disclose. (*People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 535, 332 N.E.2d 649.) As stated in *Taylor v. Taylor* (1977), 45 Ill. App. 3d 352, 354-55, 359 N.E.2d 820, 821, when the principles of disclosure and privilege clash:

"[A] balance must be struck and an appropriate resolution will not be forthcoming by a wooden application of some general formula. The answer must lie, instead, in an analysis of the particular circumstances giving rise to the problem, ever mindful of the policy considerations which furnish a basis for the two principles."

■ The insureds rely upon two privileges. First, they claim that certain documents are protected from disclosure because they were generated in preparation for trial and contained the theories, mental impressions, or litigation plans of their attorneys. This is commonly known as the work-product doctrine and is intended to prevent a "complete invasion of counsel's files." (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 108, 432 N.E.2d 250, 252.) This doctrine stems from the belief that an attorney should not be deterred from adequately preparing for trial because of the fear that his efforts will be disclosed to opposing counsel. (*Hickman v. Taylor* (1947), 329 U.S. 495, 91 L. Ed. 2d 451, 67 S. Ct. 385.) In other words, the law recognizes that an attorney should not be permitted to try a case on "wits borrowed from the adversary." *Hickman*, 329 U.S. at 516, 91 L. Ed. 2d at 465, 67 S. Ct. at 396 (Jackson, J., concurring).

■ Given the above-stated purpose, we do not believe that the

work-product privilege applies to the documents sought by the insurers in the case at bar. The materials in question were not prepared for the instant declaratory judgment action. They were prepared by the insureds' attorneys in preparation for the underlying lawsuits against the insured. Disclosure at this time could have no effect on the insureds' attorneys' ability to adequately prepare for the underlying suits. Therefore, although the work-product privilege may have been available to protect the documents from disclosure to the *Miller* and *Nunn* plaintiffs in the underlying litigation, we do not believe that it can be properly invoked to protect them against disclosure to the insurers in the present lawsuit.

■■ ■ Second, the insureds claim that the documents sought by the insurers are protected from disclosure by the attorney-client privilege. The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and his attorney by removing the fear of compelled disclosure of the communication. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 117-18, 432 N.E.2d 250.) The insureds argue that this purpose would be frustrated if the insureds knew there was a possibility that such attorney-client communications would be disclosed to their insurers in a subsequent coverage action. The insurers rely upon three arguments to support their assertion that the attorney-client privilege does not apply to the materials which they seek to discover. First, they maintain that by alleging that the defense fees and settlement costs were reasonable and necessary, the insureds have put the communications between the insureds and their attorneys in the underlying lawsuits at issue. Although there is no Illinois case law on point, several courts from other jurisdictions have held that where a party puts allegedly privileged communications at issue, it cannot claim a privilege with respect to those communications. Second, the insurers contend that the privilege is not available because the insureds and insurers both had a common interest in the underlying litigation, *i.e.*, limiting the liability on the underlying claims. Third, the insurers maintain that in light of the cooperation clause contained in the insurance policy, the insureds could not have reasonably expected that their communications with their attorneys in the underlying lawsuits would have been protected from disclosure to the insurers.

The insureds have cited several cases in support of their contention that the attorney-client privilege is not available with respect to communications put at issue by the party claiming the privilege. In *Merritt v. Superior Court* (1970), 9 Cal. App. 3d 721, 88 Cal. Rptr. 337, J.A. Stafford Trucking Company was insured by the Reserve Insurance Company. Merritt obtained a judgment against the insured in an underlying

personal injury suit, then filed an action against the insurer on the basis that the insurer failed to protect the interests of its insured. Merritt alleged that the insurer disabled Merritt's personal injury attorney from settling the case within policy limits by furnishing conflicting and irreconcilable statements concerning the amount of insurance coverage which confused Merritt's attorney. The insurer sought discovery of communications between Merritt and his personal injury attorney. Merritt claimed that the communications were protected from disclosure by the attorney-client privilege. The court found that "the theory of [Merritt's] lawsuit placed in issue the conduct and state of mind of his personal injury counsel in failing to propose a settlement" and held that the communications sought by the insurer were subject to discovery. *Merritt*, 9 Cal. App. 3d at 730, 88 Cal. Rptr. at 342.

*Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.* (1975), 66 F.R.D. 129, involved a factual situation very similar to the one before us. In that case, the insurer, Truck Insurance, defended and settled a lawsuit brought against its insured, American Security Van Lines. Upon learning that American Security was also insured by St. Paul Fire & Marine Insurance Company, Truck Insurance brought an action against St. Paul for indemnity or contribution. St. Paul denied liability and also sought discovery of the defense file from the underlying lawsuit to determine whether the attorney fees and settlement costs incurred by Truck Insurance were reasonable. Truck Insurance claimed that the underlying defense files were protected from discovery by the attorney-client privilege. The court refused to uphold the claim of privilege, holding that in defending and settling the underlying lawsuit, Truck Insurance was in effect acting on behalf of St. Paul and that both parties had a common interest in the outcome of the litigation. The court likened the situation to one in which two clients are represented in a matter of common interest by a single attorney. In that situation, the attorney-client privilege is not available to either client in a subsequent lawsuit between the two on the grounds that there could have been no expectation of confidentiality at the time the communications were made. (E. Cleary, McCormick on Evidence §91, at 191 (2d ed. 1972).) The court further stated that Truck Insurance could not claim a privilege with respect to the files of underlying defense counsel because the information contained therein was "at issue" where St. Paul was contesting the reasonableness of defense counsel's actions in defending and settling the underlying lawsuit. Other courts have followed the reasoning employed in *Truck Insurance. Charlotte Motor Speedway, Inc. v. International Insurance Co.* (1989), 125 F.R.D. 127; *Donovan v. Fitzsimmons* (1981), 90 F.R.D. 583.

The insureds in the instant cause argue that failure to treat the materials in question as privileged would have the effect of creating a new and unwarranted "exception" to the doctrine of attorney-client privilege. In our view, this argument fails to recognize that it is the privilege which constitutes an exception to the general rule of disclosure. (*People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 535, 332 N.E.2d 649.) We are not convinced that the protections afforded by the attorney-client privilege will be unduly eroded by a failure to apply it in situations where the allegedly privileged documents or communications are put at issue by the holder of the privilege.

The question then becomes whether the insureds, by suing the insurers for indemnity for settlement costs and defense fees, put the files of counsel who defended the underlying lawsuits at issue. With respect to the *Miller* litigation, the insureds' complaint alleged that the defense fees and settlement costs were reasonable and necessary. The insurers argue that one of the factors determining reasonableness is the advice given to the insureds by their attorneys and that the communications between the insureds and their attorney and the attorney's work product constitute the only source of that information. Also at issue, according to the insurers, are the nature of the damages, whether the liability in the *Miller* action was for clean-up costs not covered under the policy, and why certain parties were brought in for contribution and others released. We agree with the trial court's determination that by asserting the reasonableness of its defense fees and settlement costs, the insureds put in issue documents from the underlying defense files which related to that issue. However, we do not believe that the court was correct in ordering production of the defense files in their entirety without first conducting an *in camera* inspection to determine whether the requested documents were in fact relevant to the issue of reasonableness. While the privilege may not be asserted with respect to documents put at issue, it is possible that the underlying defense files contain materials that do not relate to the issue of reasonableness. For example, certain of the documents may relate to communications regarding the coverage issues which are the subject of the instant declaratory judgment action. An *in camera* inspection would ensure that the attorney-client privilege is protected as to those documents which properly fall within the privilege. For this reason, we remand the cause to the trial court for the purpose of conducting *in camera* inspections in accordance with the views expressed in this opinion.

■ In their cross-appeal, the insurers contend that the trial court erred in finding that the *Nunn* documents were not placed in issue by the insureds because the insureds did not request fees or costs expended

in defending that litigation. However, the insureds alleged that they met all of their obligations and conditions precedent under the insurance policy. The insured has the obligation to prove compliance with conditions in a policy prior to any obligation of an insurer to perform. (*Whalen v. K mart Corp.* (1988), 166 Ill. App. 3d 339, 343, 519 N.E.2d 991; *Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 353, 478 N.E.2d 1132.) One obligation, as stated in the cooperation clause quoted above, was to cooperate with the insurer with respect to its rights to contribution and indemnity against third parties who might be liable to the insureds. The insureds are suing for indemnity for the *Miller* litigation, in which the underlying plaintiffs sued the insureds for, among other things, negligent design and operation of the waste disposal site. In the *Nunn* litigation, the insureds counterclaimed against the prior owners of the site for negligent design and operation of the landfill. They obtained a judgment of approximately $10 million which they settled with certain of the prior owners for $1.5 million. The insurers seek the files from that litigation to discover whether, in their conduct of the counterclaim and settlement, the insureds violated the insurance policy by impairing certain rights of contribution or indemnity held by the insurers against the prior owners. By alleging that they met all of their obligations and conditions precedent, we believe that the insureds placed the *Nunn* documents at issue. In accordance with our decision concerning the *Miller* documents, the *Nunn* documents would also be subject to *in camera* inspection for the purpose of determining whether they are relevant to the issue raised by the insureds.

In light of our disposition, it is unnecessary for us to discuss the argument of the insurers concerning the common interest doctrine and the cooperation clause.

Accordingly, the judgment of the circuit court is affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

McMORROW, P.J., and JOHNSON, J., concur.