**BITUMINOUS CASUALTY CORPORATION,**
Plaintiff,

v.

**TONKA CORPORATION, Defendant and Counterclaimant,**

v.

**BITUMINOUS CASUALTY CORPORATION, et al., Additional Defendants on Counterclaim.**

Civ. No. 4–87–392.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 2, 1992.

John Gilmore, Minneapolis, Minn., for Tonka Corp.

Paul Neimann, Minneapolis, Minn., for Travelers Ins. Co.

Gay Urness, Minneapolis, Minn., for Fireman's Fund.

Leon Erstad, Minneapolis, Minn., for Northriver Ins. Co.

FRANKLIN L. NOEL, United States Magistrate Judge.

This matter was before the undersigned United States Magistrate Judge on October 7, 1991 on a motion to compel discovery from Tonka Corporation. Tonka Corporation was represented by John Gilmore, Esq. Travelers Ins. Co. was represented by Paul Neimann, Esq. Fireman's Fund was represented by Gay Urness, Esq. Northriver Ins. Co. was represented by Leon Erstad, Esq.

## I. PROCEDURAL BACKGROUND

This is a declaratory judgment action by plaintiff seeking a declaration that certain insurance policies issued by plaintiff do not provide coverage for costs associated with the clean up of pollution at Tonka's facility in Mound, Minnesota. Tonka has filed a counterclaim against plaintiff and other in-surance companies (insurers) seeking reimbursement for its costs associated with its compliance with MPCA directives that Tonka investigate and clean up pollution at the Mound site.

In response to the insurers' various discovery requests, Tonka withheld numerous documents claiming that they are nondiscoverable under the attorney-client privilege and are protected from discovery under the attorney work-product doctrine. The documents at issue are described in an index prepared by Tonka which is attached to the affidavit of Charles Jones.

In June, 1991 the insurers moved the court for an order compelling Tonka to produce documents from the following 15 categories listed on Tonka's index:[1]

1. Reports, assessments, studies, draft reports, maps, charts, boring logs, field notes and other documents prepared by Barr Engineering, Pace Laboratories and other professionals;

2. Correspondence and memoranda authored by third parties, including Barr, MPCA, and others, and sent to other third parties;

3. Correspondence and memoranda authored by third parties, including Barr, MPCA, and others, and sent to attorneys for Tonka;

4. Invoices from Barr, MPCA, Pace Laboratories, Park Construction, Twin City Testing, and other third parties;

5. Expense summaries/List of expenses;

6. Bids from well drilling and other third parties and awards of bids;

7. Correspondence and memoranda from Tonka to third parties;

8. Correspondence and memoranda from Tonka attorneys (Dorsey and Whitney) to third parties;

9. Correspondence and memoranda from third parties to Tonka;

10. Correspondence and memoranda from Tonka attorneys (Dorsey and Whit-

---

1. The insurer's motion with respect to the documents in categories 4 and 5 appears to be moot as Tonka represented that it has produced to the insurer's all documents falling within these categories.

ney) to Tonka where third parties are copied;

11. Tonka's attorneys' notes of meetings at which third parties were in attendance, e.g., meetings with MPCA representatives;

12. Tonka's attorneys' notes of telephone conversations with Tonka's representatives where notes were provided to third parties;

13. Tonka's attorneys' notes of telephone conversations with third parties including Barr, MPCA and others;

14. Tonka's attorneys' notes of conversations with unidentified persons or where identified person's association is not given;

15. Other documents listed on Tonka's document index but not identified by author or recipient.

At the hearing on June 17, 1991, the insurers brought to the court's attention for the first time a case called *Waste Management Inc. v. Int'l Surplus Lines Ins. Co.,* 203 Ill.App.3d 172, 148 Ill.Dec. 496, 560 N.E.2d 1093 (1 Dist.1990). The insurers argued that if the court followed the reasoning of the *Waste Management* court, the insurers are entitled to all of the documents described in Tonka's privilege list, not just those it sought in the motion.[2]

The court ordered the parties to meet and discuss the impact of *Waste Management* on the issues before the court on the insurers' motion to compel. The court further ordered that if the parties could not agree on whether *Waste Management* was controlling, Tonka was to file an affidavit explaining why each document in the 15 categories was privileged or was attorney work product for the court's in camera review.

The parties were unable to agree on whether *Waste Management* was controlling and Tonka filed its affidavit in which it sets forth the basis for asserting the attorney-client privilege and the work product doctrine with respect to each of the 15 categories of documents sought by the in-

surers in their motion. Thereafter, relying on the reasoning of *Waste Management,* the insurers filed the instant motion seeking to compel the production of all the documents on Tonka's privilege list. In the alternative, the insurers, relying on another case called *Aerojet–General Corp. v. Angonaut Ins. Co.,* No. 262425 (Cal.Sup. Ct. San Mateo Cty, Dec. 21, 1990) (transcript of oral order of trial court published in 5 Mealey's Litigation Reports (Insurance) no. 17, Mar. 5, 1991), seek to compel production of documents which contain the communications of Barr Engineering and Tonka's other consultants.

The motion was heard on October 7, 1991 and was taken under advisement. Tonka's objection to discovery on the basis of the attorney-client privilege will be overruled. Tonka's objection to discovery on the basis of the work product doctrine will be sustained in part and overruled in part. The insurers' motion to compel will be denied in part and granted in part.

## II. FACTUAL BACKGROUND

In 1981, as required by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), Tonka notified the Environmental Protection Agency that its facility in Mound, Minnesota might be a possible hazardous waste site. No hazardous waste was discovered after the Minnesota Pollution Control Agency (MPCA) and Tonka conducted extensive investigations at the site in 1982 through June, 1984. In June, 1984, elevated levels of hazardous substances were discovered near the Mound site. On February 5, 1985, the MPCA asked Tonka, in a letter to Tonka's lawyer, to retain consultants and to take certain specified steps to assess the extent and the magnitude of the groundwater and soil contamination at the Tonka site. *See* Exhibit A, Affidavit of Becky Comstock in Support of Motion for Leave to Amend Answer and Counterclaim to Join Additional Defendants. Tonka's counsel, Dorsey and Whitney, retained

---

**2.** Since the June 17, 1991 hearing *Waste Management* was modified on denial of rehearing by the Illinois Supreme Court in *Waste*

*Management v. Int'l Surplus Lines,* 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991).

Barr Engineering to assist in this investigation.[3]

In 1986 the MPCA issued a Request for Response Action under the Minnesota Environmental Response and Liability Act (MERLA) (codified at Minn.Stat. § 115B, et seq.) naming Tonka as a responsible party for pollution found at the Mound site and requesting that Tonka take certain investigative, remedial, removal and monitoring actions within a specified time frame. The MPCA's request also advised Tonka that it would be subject to one of the following sanctions if it failed to take the requested actions in an adequate and timely fashion:

1) The MPCA may undertake and complete the requested response actions and sue Tonka for the cost of the response actions and the MPCA's attorney's fees; or

2) Tonka may be subject to an action to compel performance of the requested response action or an action for injunctive relief to enjoin the release or threatened release of pollution at Tonka's facility in Mound.

Additionally, if Tonka failed to take the requested response actions specified by the MPCA in a timely or adequate fashion, Tonka was advised that the MPCA may seek assessment of civil penalties up to $20,000 per day. *See* Exhibit B, Affidavit of Becky Comstock in Support of Motion for Leave to Amend Answer and Counterclaim to Join Additional Defendants.

Barr Engineering prepared a remedial investigation report in May 1987 in response to the MPCA's Request for Response Action. The MPCA approved the report with modifications in July 1, 1987. Apparently Tonka has complied with the MPCA's requirements. Barr currently monitors the site.

In the summer of 1985 Tonka notified its insurers of the pollution at the Tonka site in Mound and of the fact that the MPCA was requiring it to undertake investigative and monitoring work. During the summer of 1985 and 1986, Barr's work was funded in part by plaintiff Bituminous Insurance Corporation.[4] In May, 1987, Bituminous initiated this lawsuit against Tonka, seeking a declaration that Tonka was not entitled to insurance coverage for the investigation, remedial and removal work and monitoring costs associated with the Tonka site in Mound. Bituminous asserted several reasons for its position that its insurance contract did not provide coverage for Tonka's claim, including:

1. The loss did not occur during the period that plaintiff's policy provided insurance coverage;

2. The loss does not constitute property damage within the meaning of the insurance policy;

3. The loss was not the result of an accident within the meaning of the insurance policy;

4. The loss occurred on property not covered by the insurance policy;

5. The policy's pollution exclusion precludes coverage because the loss was expected and intended by the insured; and

6. The policy's pollution exclusion precludes coverage because the loss was not sudden and accidental.

Tonka filed a counterclaim against Bituminous and several other insurance companies seeking reimbursement for the costs associated with the investigation and clean up of the Tonka site in Mound.

### III. LEGAL ANALYSIS

The insurers claim that the documents generated during the investigation and clean up of the Mound site are relevant to the disputed coverage issues because they evidence or will lead to the discovery of evidence concerning how, when, where and why the pollution occurred at the Tonka site. Tonka has represented to the court that it has produced to the insurers all documents which it has submitted directly

---

**3.** It appears that Tonka had retained Barr Engineering in 1984, or perhaps earlier, to perform investigative and monitoring work at the Tonka facility in Mound. *See* Insurer's Memorandum in Support of Motion to Compel at 5.

**4.** There appears to be an issue of fact as to whether this defense was provided with a reservation of rights.

to the MPCA and all documents which were copied to the MPCA. *See* Tonka's Memorandum in Opposition to Motion to Compel Production of Documents. The court will therefore proceed under the assumption that the documents at issue are documents which have been prepared by either, Tonka, Tonka's corporate counsel, Tonka's retained counsel, or Tonka's consultants and that these documents were circulated only among these entities.

### A. Attorney–Client Privilege

■ The Federal Rules of Civil Procedure provide that parties may obtain discovery regarding any matter which is not privileged. Fed.R.Civ.P. 26(b)(1). Since subject matter jurisdiction in this case rests on diversity, the attorney-client privilege issue is governed by Minnesota law. Fed.R.Evid. 501. Minnesota attorney-client privilege statute provides that:

> An attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent.

Minn.Stat. § 595.02, subd. 1(b). When deciding whether the attorney-client privilege exists under the statute, Minnesota courts consider whether the information sought is a confidential communication between an attorney and client made for the purpose of securing legal advice. *See Brown v. St. Paul City R.R. Co.*, 241 Minn. 15, 62 N.W.2d 688, 700 (1954). The party asserting the privilege must show that each of these elements has been satisfied. *See Sprader v. Mueller*, 265 Minn. 111, 121 N.W.2d 176 (1963); *United States v. Bonnell*, 483 F.Supp. 1070, 1076 (D.Minn.1979). Because the privilege excludes truthful evidence, it must be narrowly construed. *Id.*

■ The insurers contend they are entitled to all of the documents on Tonka's privilege list based upon the reasoning of the Illinois Supreme Court in *Waste Management*, 144 Ill.2d 178, 161 Ill.Dec.

774, 579 N.E.2d 322 (1991). In *Waste Management*, the Illinois Supreme Court concluded that the cooperation clause of the insurance policies at issue in that case rendered the attorney-client privilege unavailable to the insured. The original opinion of the Court relied upon the express language of the cooperation clause which required the insured to "give all such information and assistance as the insurers may reasonably require." When, upon a request for rehearing, it was brought to the Court's attention that not every policy at issue in that case contained such a clause, the Court concluded that even absent such an explicit duty to cooperate clause, the principles of "fairness and good faith" compel the conclusion that an insurance contract renders the attorney-client privilege unavailable to an insured who is in litigation with his insurance company.

This court finds the reasoning of the Illinois Supreme Court to be fundamentally unsound. This court rejects the conclusion that because an insured agrees to cooperate with the insurance company, in the event he is sued or otherwise makes a claim under the policy, that the insured has thereby forever contractually waived the attorney-client privilege. To hold that an insurance policy creates a contractual waiver of the attorney-client privilege, even when the insurance company later sues the insured contending the insured's claim is not covered by the policy, would completely eviscerate the attorney-client privilege. Absent a showing that the parties intended the language of the cooperation clauses of the insurance policies at issue here to work a waiver of the attorney-client privilege, the court declines to follow the holding of *Waste Management* to find a contractual waiver of the privilege. Absent such an expressed intent, there is nothing about an insurance contract or the relationship between an insurance company and its insured which compels a court to ignore the express statutory language of Minnesota's attorney-client privilege. Minn.Stat. § 595.02, subd. 1(b).

■ This court also finds unsound the Illinois Supreme Court's extension of the

"common interest" exception to the attorney-client privilege. When an attorney acts for two different clients who each have a common interest, communications of either party to the attorney are not necessarily privileged in subsequent litigation between the two clients. McCormick, Evidence § 91, at 219 (3rd ed. 1984). The *Waste Management* opinion extends this doctrine to hold the attorney-client privilege unavailable to an insured even where the insured's attorney never represented the insurance company, and was not even retained by the insurance company to represent the insured. This reasoning is unsound. The rationale which supports the "common interest" exception to the attorney-client privilege simply doesn't apply if the attorney never represented the party seeking the allegedly privileged materials.

Having rejected the insurer's contention that the attorney-client privilege is unavailable to Tonka, the court must decide whether Tonka has sustained its burden of establishing each element of the privilege with respect to each document on its privilege list.

■ The court finds that Tonka's affidavit is insufficient to establish that the documents on its privileged list contain the substance of confidential client communications. *See, e.g., United States v. Bonnell,* 483 F.Supp. at 1077 (attorney's summary of meeting not privileged when memorandum did not reveal information from client). Even if Tonka's counsel prepared notes and memoranda containing client communications, the privilege is lost if the documents were copied to Tonka's consultants or the MPCA because the confidential aspect of the communication has been destroyed. Only the notes and memoranda of Tonka's counsel containing the substance of client communications which have not been disclosed to third parties may be withheld from discovery on the ground of attorney-client privilege. *See id.* Likewise Tonka has failed to establish that the drafts of the documents prepared by its consultants and other memos and letters circulated among Tonka, its consultants and its attorneys contained confidential communications made to secure legal advice.

In summary, the court finds that the affidavit submitted by Tonka is insufficient to establish that the documents on the list contain confidential communications between Tonka and its counsel for the purpose of securing legal advice. The court will overrule Tonka's objection to discovery on the ground that all documents on its index of withheld documents are covered by the attorney-client privilege.

## B. The Work Product Doctrine

Tonka submitted to the MPCA reports responsive to the MPCA's directives. Tonka represented to the court that these documents, along with other documents copied to the MPCA, have not been withheld from the insurers. It appears from review of Tonka's index that Tonka has only withheld documents which were circulated among Tonka, Tonka's counsel and Tonka's consultants and which were not provided to the MPCA.

■ The insurers move the court for an order compelling discovery of these documents. Tonka has withheld these documents on the alternative theory that they are protected from discovery by the attorney work product doctrine. The insurers contend that the documents at issue are not work product and are discoverable because the documents were not prepared in anticipation of litigation or trial. Tonka contends that the documents at issue were prepared in anticipation of litigation with the MPCA. As such, Tonka argues that the insurers are not entitled to discover its counsel's ordinary work product because the insurer's have not shown a substantial need for such discovery. Tonka further argues that some documents are immune from discovery altogether to the extent that they contain the opinions and mental impressions of Tonka's counsel.

■ The work product doctrine provides that discovery of "documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" may only

be accomplished upon demonstration of substantial need and inability to obtain substantially equivalent information from other sources without undue hardship. Fed. R.Civ.P. 26(b)(3). The rule also provides, however, that an attorney's opinions, legal theories and mental impressions enjoy absolute immunity from discovery. *Id.* Rule 26(b)(3) is the codification of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman,* the Supreme Court recognized the need for an attorney to maintain the secrecy of his work when preparing his case in anticipation of litigation and for actual trial. *Id.* Accordingly, trial preparation documents that contain the fruits of the attorney's investigative endeavors and any compendium of relevant evidence prepared by the attorney are considered work product. *In re Murphy,* 560 F.2d 326, 337 (8th Cir.1977).

■ The insurers argue that the documents at issue were not prepared in anticipation of this litigation and therefore they can not be withheld as work product. The insurers again rely on the Illinois Supreme Court's *Waste Management* opinion. In *Waste Management* the Illinois Court rejected the insured's work product claim because Illinois takes a "narrow approach" to the discovery of attorney work product. The Court concluded that because the alleged work product was prepared for the mutual benefit of the insureds and insurers against a third party adversary and not prepared in anticipation of or for use in the declaratory judgment action in which the discovery was sought, the work product doctrine didn't apply. The Illinois approach to work product is simply inconsistent with the law of the Eighth Circuit. It is the law of this Circuit that the work product doctrine extends to documents prepared in anticipation of or for previous litigation, regardless of whether the previous litigation was related or unrelated to the case in which discovery is sought. *In re Murphy,* 560 F.2d 326, 334–35 (8th Cir.1977). In *Murphy,* the Eighth Circuit recognized that the work product doctrine would be attenuated if it were limited to documents that were prepared in the case for which discovery is sought. *Id.* at 334.

■ The court agrees with the insurers here that none of the documents were prepared in anticipation of this declaratory judgment action. The inquiry this court must answer is whether the documents were in fact prepared in anticipation of some litigation.

Whether documents were prepared in anticipation of litigation depends on the facts and circumstances of each case. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir.1987), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). The Eighth Circuit has adopted the oft cited Wright and Miller test to assist in determining whether documents were prepared in anticipation of litigation:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Id.* (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 at 198–99 (1970)). The advisory committee's notes to Rule 26(b)(3) affirm the validity of the Wright and Miller test: "Materials assembled in the ordinary course of business ... or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision". Fed.R.Civ.P. 26(b)(3) advisory committee's notes. *See Simon v. G.D. Searle & Co.,* 816 F.2d at 401.

The insurers argue that the trial court's opinion in *Aerojet–General Corp. v. Angonaut Ins. Co.,* No. 262425 (Cal.Sup.Ct. San Mateo Cty, Dec. 21, 1990) (transcript of oral order of trial court published in 5 Mealey's Litigation Reports (Insurance) no. 17, Mar. 5, 1991) compels the conclusion that, at least with respect to the Barr Engineering documents, the documents were not prepared in anticipation of litigation but were prepared simply to remediate the pollution problem. Said the court in *Aerojet:*

> Attorney involvement in this effort was merely incidental to the overriding pur-

pose, and it stands the whole situation on its head to say that the dominate purpose of the investigation was to advise Aerojet counsel in respect to claims which were or might be made against Aerojet.

*Id.* (published in 5 Mealey's Litigation Reports (Insurance) no. 17 at A4). The court rejects the insurers' argument. Indeed in the instant case it appears to the court that the threat of litigation with the MPCA was the motivating factor which moved Tonka to complete the clean up of the Mound facility.

In February, 1985, Tonka's counsel retained Barr Engineering and apparently hired other consultants to conduct investigations and prepare reports responsive to MPCA directives. This court finds that the consultants' preliminary drafts of documents which were ultimately submitted to the MPCA[5] and the underlying data for those documents are the fruits of counsel's investigative endeavors. It follows that communications among Tonka, its counsel and consultants necessary to facilitate the investigative and remedial process fall under the scope of counsel's investigative endeavor. The key issue with respect to the applicability of the work product doctrine is whether counsel's investigation and Tonka's subsequent remedial measures were conducted in the course of Tonka's ordinary business or in anticipation of litigation.

The court finds that the documents the insurers seek, which were generated after the MPCA's February 5, 1985, request to Tonka's lawyer, were generated in anticipation of litigation with the MPCA. The documents were not generated in the ordinary course of Tonka's business as is argued by the insurers. *Compare In re LTV Securities Litigation,* 89 F.R.D. 595, 612 (N.D.Tex.1981) (documents generated during pendency of SEC investigation are work product as SEC investigation presents more than a remote prospect of future litigation) with *Rakus v. Erie–Lackawanna R.R. Co.,* 76 F.R.D. 145 (W.D.N.Y.

1977) (accident reports generated as required by ICC regulations are generated in normal course of business; *Rakus* silent as to discoverability of underlying information).

Although the MPCA began its investigation of the Tonka Mound site in 1982, it was not until 1984 that elevated levels of hazardous substances were located at the site. In February 1985, the MPCA requested that Tonka conduct further investigation of the site pursuant to its authority under MERLA, which enables the MPCA to respond to threats to public health and safety posed by hazardous waste sites in Minnesota. In 1986 Tonka was ultimately found to be responsible for the pollution and was asked to perform various response actions under the MPCA's supervision.

In order to preserve government funds, MERLA requires that the MPCA must first ask the party who it has determined is responsible for the pollution to perform the specified response actions. Minn.Stat. § 115B.17(1)(a)(1). If a responsible party refuses to perform the response action specified by the MPCA, the MPCA may seek assessment of civil penalties against the responsible party. Minn.Stat. § 115B.18(1). The MPCA may then clean up the site using government funds and sue the responsible party for reimbursement or obtain a mandatory injunction requiring the responsible party to cleanup the site as specified by the MPCA.

The MPCA's designation of responsible party status thus imposes a huge obligation on the responsible party and requires a responsible party to make important strategic decisions about whether to comply with the MPCA's request. *See, e.g., Solid State Circuits, Inc. v. U.S.E.P.A.,* 812 F.2d 383, 388–89 (8th Cir. 1987); *United States v. Reilly Tar & Chemical Corp.,* 606 F.Supp. 412 (D.Minn. 1985). Any action that a company takes in response to the MPCA's requests before and after designation of responsible party status are therefore made under the strong prospect of future litigation over issues

---

**5.** The documents in the form they were ultimately produced to the MPCA have been produced to the insurers.

such as the propriety of the designation of responsible party status, the scope of the clean up and the adequacy of the clean up. The fact that Tonka was able to avoid actual litigation with the MPCA in this case does not mean that the efforts undertaken by Tonka's counsel and its consultants were not done in anticipation of litigation.

The court concludes that documents generated after the MPCA issued its Request for an Initial Investigation on February 5, 1985, were generated in anticipation of litigation with the MPCA and are therefore protected from discovery by Fed.R.Civ.P. 26(b)(3). Although litigation was always a prospect from the moment Tonka notified the EPA of the existence of the Tonka Main Site pursuant to CERCLA, before the MPCA issued its Request for Initial Investigation the prospect of litigation was too remote to enable the court to conclude that the documents at issue here were prepared or obtained *because* of the prospect for litigation.

 In order for the insurers to overcome work product protection with respect to Tonka's counsel's ordinary work product, the insurers must demonstrate substantial need or inability to obtain the same information without undue hardship. Fed. R.Civ.P. 26(b)(3). The burden of proving substantial need or undue hardship is on the party seeking the discovery. *Hickman v. Taylor*, 329 U.S. at 511, 67 S.Ct. at 394. Counsel's mental impressions and opinions about the case, however, are not subject to discovery under any circumstances.

The court finds that the insurers have not made the required showing with respect to each document that Tonka has withheld from discovery. As to documents generated after the February 5 MPCA Request, the court will sustain Tonka's work product objection to the insurers' discovery requests and will deny the insurer's motion to compel without prejudice to the insurers filing another motion setting forth with the requisite specificity the facts and circumstances warranting discovery of each document constituting opposing counsel's ordinary work product in this case.

Accordingly, based on the files, records and proceedings herein;

IT IS HEREBY ORDERED that:

1. Tonka's objection to the insurers discovery of documents listed on Tonka's index of withheld documents on the basis of the attorney-client privilege is overruled;

2. Tonka's objection to the insurers discovery of documents listed on Tonka's index of withheld documents on the basis of the work product doctrine is sustained as to documents generated after the MPCA issued its Request for Initial Investigation, and overruled as to documents generated before the Request for Initial Investigation was issued;

3. The insurers' motion to compel discovery is in part DENIED without prejudice to the insurers filing another motion to compel setting forth the insurers' substantial need for a specific document or undue hardship under Rule 26(b)(3), and in part GRANTED as to any documents generated before the MPCA issued its Request for Initial Investigation.