**BRIGGS & STRATTON CORPORATION,**
a Wisconsin corporation, Plaintiff,

v.

**CONCRETE SALES & SERVICES,**
et al., Defendants,

v.

**PEACH METAL INDUSTRIES, INC.,**
et al., Third–Party Defendants.

No. 5:95–cv–525–1 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 5, 1997.

Joan B. Cravey, Daniel S. Reinhardt, Atlanta, GA, for Briggs & Stratton Corp.

Linwood Robert Lovett, J. Douglas Cowart, Macon, GA, for Concrete Sales and Services, Inc.

Linwood Robert Lovett, J. Douglas Cowart, Craig N. Cowart, Macon, GA, for Francis M. Coody, Timothy A. McCord.

Robert C. Norman, Jr., Macon, GA, for Turner Ashby McCord.

Alvin E. DeGraw, Jr., Fort Valley, GA, pro se.

Charles R. Adams, III, Fort Valley, GA, Travis M. Trimble, Susan S. Cole, Charles E. Cox, Jr., Macon, GA, for Peach County.

Edward H. Lindsey, Jr., Kathryn A. Cater, Atlanta, GA, for South Carolina Ins. Co.

Michael Morgan Smith, Macon, GA, for Peach Metal Industries, Inc.

William Michael Peterson, Warner Robins, GA, for Ann H. DeGraw.

**508**

Thomas W. Rhodes, Jr., Edward H. Wasmuth, Jr., Atlanta, GA, for Blue Bird Body Co., Cardinal Manufacturing Co.

F. Kennedy Hall, Macon, GA, Thomas T. Terp, J. Steven Justice, Cicinnati, OH, for Allied Chemical Corp., Thiokol Corp.

Michael Johnson, Shawn M. Willette, Joyce Mocek, Atlanta, GA, for Simplex Nails.

Robert C. Norman, Jr., Macon, GA, for Turner Ashby McCord, Jr.

## *ORDER*

OWENS, District Judge.

Defendant Frances M. Coody and Timothy A. McCord, as Trustees for the irrevocable Trust of T.A. McCord, Jr. ("the Trustees"), have filed a motion to compel plaintiff Briggs & Stratton Corporation ("Briggs") to disclose and produce documents and other tangible items. The Trustees served plaintiff with a request for production of documents requesting all correspondence and documentation to and from the environmental consultants used at the Peach Metal Industries ("PMI") site and Briggs or its attorneys, as well as the supporting documentation for the legal bills and services performed by Briggs' attorneys or its engineers.

Briggs & Stratton have filed a response in opposition, asserting that the documents are protected by the privilege against disclosure of work product. It has produced two privilege logs which provide a subject matter description of each of the withheld items and describe the reason for the claimed privilege as to each item. Part A of the privilege log relates to documents from the files of Briggs' legal counsel, Quarles & Brady and Troutman Sanders, while Part B relates to documents obtained from the files of its environmental consultant, the Radian Corporation.

A telephone conference was conducted in this matter, and it was determined that discovery would be stayed pending the court's in camera review of the documents in question. On August 4, 1997, this court signed a consent order and stipulation of counsel concerning defendants' motion to compel, in which it was ordered and agreed that Briggs would produce certain documents identified in Exhibit A and Exhibit B with the stipulation that said production shall not be deemed to be a waiver of any of the remaining documents to which Briggs claims privilege. The court has now reviewed each of the remaining documents for which Briggs claims it is entitled to the work product privilege. Based upon such review, the Court finds that the remaining withheld documents are work product generated in anticipation of litigation and that Briggs is consequently entitled to shield them from discovery.

The work product exception as set out in FED.R.CIV.P. 26(b)(3) provides:

> A party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable to obtain the substantial equivalent of the materials by other means.

The work product doctrine originated in the decision of the United States Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and was subsequently codified in the Rule. The protection from discovery of documents classified as work product is only a qualified immunity. *Lott v. Seaboard Systems Railroad, Inc.,* 109 F.R.D. 554, 557 (S.D.Ga.1985). In order to come within the protection of Rule 26(b)(3) the materials must have been prepared in anticipation of litigation or for trial. The materials need not have been prepared by an attorney, however: work product protection extends to materials prepared by or for a representative of a party, including his agent or consultants, so long as they are prepared in anticipation of litigation. *Id.* at 556. In claiming the protection of the rule against disclosure of work product, it is sufficient that the materials have been produced in preparation for likely litigation, whether or not a trial ultimately takes place. *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir. Feb.12, 1981); *McMahon v. Eastern Steam-*

*ship Lines, Inc.*, 129 F.R.D. 197, 198 (S.D.Fla.1989). However, materials produced in the ordinary course of business and without contemplation of litigation are not privileged. *Id.*

■ The Trustees assert that the withheld documents are discoverable because they were prepared in the ordinary course of business. They argue that since the withheld documents relate to actions taken by Briggs' environmental consultants to clean up the PMI site pursuant to a Section 106 Order issued by the Environmental Protection Agency, the documents were not produced in contemplation of litigation. The Trustees also argue that some of the withheld documents are not confidential because the Section 106 Order issued by the EPA required Briggs & Stratton to preserve all records developed pursuant to the implementation of the order for at least six years. Additionally, the Trustees claim that Briggs waived any privilege by entering into the "Phase I Agreement" between Briggs and the Trust, which required Briggs to make available to the Trustees all sampling results, test results, inventories, survey work, and other data generated during the implementation of the work plan.

■ Briggs & Stratton argues that because of the nature of actions under CERCLA all the withheld documents were generated in contemplation of litigation. In situations involving environmental cleanups the strong prospect of future litigation arises at the time potentially responsible parties are identified. For example, in *Bituminous Casualty Corporation v. Tonka Corporation*, 140 F.R.D. 381 (D.Minn.1992), the court upheld the assertion of work product privilege, finding that any documents which were generated after the state pollution control agency requested an initial investigation were generated in anticipation of litigation with the agency. The *Tonka* court reasoned that "any action that a company takes in response to the [agency's] requests before and after designation of responsible party status are ... made under the strong prospect of future litigation over issues such as the propriety of the designation of responsible party status, the scope of the clean up and the adequacy of the clean up." *Tonka*, 140 F.R.D. at 389. This reasoning is persuasive. The documents in the instant case were generated by Briggs' personnel, consultants, and attorneys during the course of responding to the EPA Order requiring cleanup of the PMI site. The documents were not produced voluntarily or for any business purpose which existed apart from the EPA order. Briggs and its agents were faced with the threat of daily fines and possible recovery of several times costs if the EPA ultimately undertook to clean up the site itself. Because of the extensive costs involved in the clean-up and the possibility of identifying other potentially responsible parties to share in the costs, it is reasonable to conclude that litigation was contemplated against any other potentially responsible party from the time of issuance of the EPA order.

■ Neither the Phase I Agreement with the Trustees nor the EPA's requirement of preservation of all documents relating to the clean-up for six years defeats the confidentiality of the withheld documents. As to the Phase I clean-up agreement, Briggs does not claim privilege with respect to the factual information contained in the withheld documents. The privilege is asserted only as to the documents as they relate to the investigation of Briggs' personnel and agents for the purpose of putting the consultants' draft reports into proper legal form. The court does not accept the Trustees' position that the EPA's directive to preserve documents related to the cleanup is sufficient to negate an attorney-client or work product privilege for documents otherwise entitled to any of those privileges.

■ The Trustees assert that they are entitled to production of the withheld documents even if they are determined to be work product. If it is determined that the material sought by a party is protected by the work product doctrine, a moving party may nevertheless compel production only when (a) a substantial need for the information exists and (b) it would cause undue hardship to obtain the substantial equivalent of the material by other means. *McMahon*, 129 F.R.D. at 198. Rule 26(b)(3) provides

that "when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

■ The Trustees state that they have a substantial need for most of the withheld documents and that they would be impossible to otherwise obtain. They specifically mention documents relating to costs and damages incurred by Briggs for work performed by the engineers. In response, Briggs observes that it performed the work required by the EPA and produced to the Trustees all interim reports, final reports, work plans, and analytical data submitted to the EPA and on the basis of which the agency determined that Briggs & Stratton completed the work required by the Order. The Trustees also allege that they have a substantial need for production of statements taken and letters written to or by James Skar, a former employee of Briggs who is now deceased, which memorialize Mr. Skar's memory and conversations between him and Briggs or its agents. They rely on *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir.1979), which held that although requiring the production of an interview memorandum from an attorney's files was a "rare situation," the government could not secure the information from any more reliable source. *Id.*, 599 F.2d at 1231. Briggs emphasizes, however, that it has provided Mr. Skar's affidavit which preserves his sworn statements as to the events in question and that this case is distinguishable from *In re Grand Jury Investigation* because the affidavit is a more reliable source of the witness's knowledge than interview notes would be. The court determines that both with respect to damages and to documents relating to interviews with Mr. Skar the Trustees have failed to demonstrate a need for such information sufficient to overcome the work product privilege.

■ The Trustees also argue that they have a substantial need for information relating to the terms of the settlement agreement between Briggs and defendant Peach County, stating that "for example, if Peach County has paid Briggs $5.1 million dollars, the Trust is entitled to know that for purposes of evaluating what, if anything, is left of Briggs' claim." In response, Briggs indicates that no money has changed hands with Peach County and that the Trust has all the relevant information regarding Briggs' claim. Given this assurance by Briggs, the Trustees have similarly failed to satisfy their burden of establishing a substantial need for the confidential settlement documents between Briggs and Peach County.

Briggs has identified areas of compromise with respect to the remaining categories of items for which the Trustees assert a need. First, Briggs offers to provide videos of the PMI site which were prepared by its attorneys and environmental consultants so long as the dialogue between the attorneys and environmental consultants are redacted. As to the Trustees' asserted need for documents relating to the actions of Briggs' attorneys concerning the $192,688.78 Briggs seeks in attorneys' fees, Briggs agrees to produce the unredacted bills of its legal counsel subject to the Trustees' agreement that it will likewise produce the unredacted bills of its present and former legal counsel for which it seeks reimbursement in this action. Because these are in the court's view reasonable efforts at compromise, and to the extent that any of these items are not covered by the previously mentioned order of August 4, 1997, Briggs is hereby instructed to provide such documents under the terms it outlines.

■ The court notes that the limitation imposed by the work product doctrine is limited by Rule 26(b)(3) to "documents and tangible things" rather than facts which may be learned from such documents and things. *Lott v. Seaboard Systems Railroad, Inc.*, 109 F.R.D. at 557. Briggs asserts that it has already provided to the Trustees all factual information contained in the withheld documents, including all final reports, interim reports, and all underlying analytical data related to the PMI site, both contemporaneously during the cleanup and subsequently in a production of documents during the course of the lawsuit. To the extent that they desire information not contained in the documents which have been provided, the Trustees have not satisfactorily estab-

lished that they cannot obtain such information by other discovery routes.

Based on the foregoing reasons, the Trustees' motion to compel production of the remaining documents withheld by Briggs & Stratton will be denied.